Argued and submitted November 13, 1981, reversed
and remanded for reconsideration May 12, 1982

## MINTON,
*Petitioner,*

*v.*

## EMPLOYMENT DIVISON et al,
*Respondents.*

(EAB No. 81-AB-388, CA A20772)

644 P2d 632

Robert A. Sacks, Portland, argued the cause for petitioner. With him on the brief was Jolles, Sokol & Bernstein, P.C., Portland.

Richard David Wasserman, Assistant Attorney General, Salem argued the cause for respondent Employment Division. With him on the brief were Dave Frohnmayer,

Attorney General, and William F. Gary, Solicitor General, Salem.

No appearance for respondent Boise Cascade, Northwest Oregon Region.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

Claimant appeals from an order of the Employment Appeals Board denying her unemployment compensation benefits on the grounds that she was not able to work and was not available for work as required for eligibility under ORS 657.155(1)(c).[1]

Claimant has worked for Boise Cascade in its Willamina mill since 1966. In October, 1979, claimant sustained an on-the-job injury to her right hand, for which she received workers' compensation benefits. In September, 1980, her physician released her to go back to work on her original job as a veneer clipper operator. Boise Cascade's doctors, however, would not release her for work as a veneer clipper operator. Boise Cascade offered her alternative positions at its Camp Adair and Salem mills. She refused those jobs, because she was afraid she would lose her 15 years of seniority at the Willamina plant. When she applied for unemployment benefits, she was under the impression that work in the Willamina plant would soon be available and therefore indicated on her job search forms that she was "on call" with her employer. Juliana Molek, an employment adjudicator with the Employment Division, determined that claimant was not on call, because she did not have a date certain for being called back to work. On the basis of this finding, the Division denied claimant benefits, finding that she was not actively seeking work. The referee affirmed the administrative decision, concluding that claimant did not meet requirements for availability under the Division rules. The Board affirmed the referee on this point and also found that claimant was not "able to work" within the meaning of ORS 657.155(1)(c).

An initial question to be decided is the scope of judicial review of this administrative order. In *McPherson*

---

[1] ORS 657.155(1)(c) provides:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the assistant directors find that:

" * * * * *

"(c) He is able to work, is available for work, and is actively seeking and unable to obtain suitable work. No individual participating in a community work and training program, as defined in ORS 411.855, shall, solely by reason thereof, be unavailable for work within the meaning of this section."

*v. Emp. Div.,* 285 Or 541, 591 P2d 1381 (1979), the Supreme Court held that the Unemployment Compensation Act, ORS chapter 657, contains two different types of terms: (1) those that the courts have the primary responsibility to interpret and define; and (2) those that the agency has the primary responsibility to interpret and define. Using *McPherson* as a guideline, this court, in *Oliver v. Emp. Div.,* 40 Or App 487, 492, 595 P2d 1252 (1979), concluded that the eligibility requirements in ORS 657.155(1)(c) fit the second category of terms and are for administrative, not judicial definition. In the more recent case of *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980), the Supreme Court reiterated the *McPherson* holding, labeling as "delegative terms" those statutory provisions that the legislature intended to be "fleshed out" by the agency. Judicial review of agency decisions pertaining to delegative terms is provided for in ORS 183.482(8)(b):

> "The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:  ·
>
> "(A)  Outside the range of discretion delegated to the agency by law;
>
> "(B)  Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or  ·
>
> "(C)  Otherwise in violation of a constitutional or statutory provision."

If the agency has acted within its discretion, review is limited to determining whether the order is supported by substantial evidence. ORS 183.482(8)(c).

■      Applying those review standards to the present case, we have first to determine whether the agency has gone outside the range of discretion delegated to it by the legislature. This court has already determined that the legislature has delegated to the Employment Division the authority to define the terms "able to work" and "available to work" in ORS 657.155(1)(c). *Oliver v. Emp. Div., supra.* Pursuant to that delegation, the Division has adopted the following rules:

> " * * * * *
>
> "(2)  For the purposes of ORS 657.155(1)(c), an individual shall be considered able to work only if he is physically and mentally capable of performing work during

all of the customary workweek for the type of work being sought pursuant to the provisions of section (1) of this rule. However, an occasional and temporary disability for less than half the customary workweek shall not result in a finding that the individual is unable to work for the week.

"(3) For the purposes of determining whether or not an individual is available for work under the provisions of ORS 657.155(1)(c), the Administrator shall require at a minimum:

"(a) That the individual be willing to work full time during all of the usual hours and days of the week customary for the work he is seeking pursuant to section (1) of this rule.

"(b) That the individual be reasonably accessible to any suitable work opportunities within the labor market in which he is seeking work pursuant to section (1) of this rule, including any temporary work opportunities that are otherwise suitable unless such temporary work will bar or interfere with his return to his regular employment.

"(c) That the individual has not imposed conditions which substantially reduce his labor market attachment." OAR 471-30-036.

The rules set forth criteria which function as guidelines for the referee and the Board in making determinations as to a claimant's eligibility for benefits. We find that the Division acted within its range of discretion in the promulgation of these rules.

■ We now turn to the question of whether there is substantial evidence in the record to support the Board's determinations that claimant was not able to work, or was not available for work, under OAR 471-30-036. We find that there is not.

In its order, the Board concluded that:

"Concerning her situation with Boise Cascade, we find that the claimant is not able to work within the meaning of ORS 657.155. The employer has determined that the claimant's medical condition is not such that she is able to safely perform her job. Since she is not able to work for that employer, she cannot continue to list them as a work search contact as she has been doing."

The Board based its conclusion that claimant was not able to work on the finding that "the employer's medical doctors indicate that the claimant is not able to return to work and

the employer, during the weeks in issue, would not return her to work because of her condition." Claimant presented evidence of a work release from her physician, releasing her to "handle the clipper operator job as described" and stating that claimant "could lift up to 40 or 50 pounds repetitively." The employer, Boise Cascade, was not represented at the hearing and presented no evidence; however, Ms. Molek, testifying for the Employment Division, said that a representative from Boise Cascade told her that the employer considered claimant not to be medically stationary. The only other evidence describing claimant's physical condition was a letter from Boise Cascade's attorney, who stated that claimant had been disqualified from working *as a clipper operator*. Ms. Molek testified that, although Boise Cascade had refused to reinstate claimant at the Willamina plant, it had offered her alternative positions for lighter duty work at other plants.

Claimant testified that she would accept such a light duty position at the Willamina plant. She also testified that she was told that she would be given a light duty job assignment at Willamina as soon as one opened up and that light duty work had become available, but had been given to others. All the evidence on the issue was to the effect that she was able to work, if not at her previous job, then at light duty work. Although the Board was not required to accept that evidence, it could not conclude that claimant had not sustained the burden of proving that she was able to work, unless it found none of that evidence to be believable. It did not make such a finding. There is not substantial evidence to support a finding under OAR 471-30-036 that claimant was physically incapable of performing work of the light duty type she was seeking.

Having determined that there was not substantial evidence to support the Board's conclusion that claimant was not able to work, we turn to the question whether there was substantial evidence that claimant was not available for work. Claimant testified that she had made repeated requests, through her attorney, for written assurances that if she sought work elsewhere, her seniority status would not be impaired. One of the attorney's letters seeking such a guarantee is included in the record. The record contains

no response to that letter, and claimant testified that Boise Cascade never gave her the requested guarantee. Claimant further testified that she had personal knowledge of other employes who had lost their plant seniority after such a break in service. She testified that she was ready at all times to return to the Willamina plant. The referee concluded, and the Board agreed, that she had not proved that accepting work outside of the Willamina plant would be considered a break in service (and, hence, cause her to lose 15 years of seniority status).

Both the referee and the Board misperceived the issue. It is not whether claimant would, in fact, have lost her seniority at the Willamina plant, but whether her belief that taking other work would cause her to lose her seniority was reasonable so as to bring her within the exception in OAR 471-30-036(3)(b). The Board has not addressed that issue; it must. *See Bremer v. Employment Division,* 52 Or App 293, 628 P2d 426 (1981).

The order of the Employment Appeals Board dated July 21, 1981,[2] is reversed, and this matter is remanded to the Board for reconsideration.

---

[2] After claimant had filed her notice of appeal, she moved for permission to present additional evidence. The matter was remanded to the referee, who reopened the record to receive the additional evidence. After review, in an order dated July 21, 1981, the Board elected to stand on its original decision of March 25, 1981.