687 P.2d 371

**LAKE HAVASU COMMUNITY HOSPITAL, INC., an Arizona corporation, Plaintiff-Appellee,**

v.

**ARIZONA TITLE INSURANCE AND TRUST COMPANY, an Arizona corporation, Defendant-Appellant.**

No. 1 CA–CIV 5973.

Court of Appeals of Arizona, Division 1, Department C.

May 1, 1984.

Reconsideration Denied July 17, 1984.

Mitchell, Jensen & Timbanard, P.C. by Sheldon Mitchell, A. Alexander Katz, Phoenix, for plaintiff-appellee.

Jennings, Strouss & Salmon by Timothy W. Barton, and Beus, Gilbert, Wake & Morrill by Neil Vincent Wake, Phoenix, for defendant-appellant.

## OPINION

OGG, Judge.

This is an appeal from a judgment in favor of plaintiff-appellee Lake Havasu Community Hospital (Community Hospital) against defendant-appellant Arizona Title Insurance and Trust Company (Arizona Title). The action arises out of a policy of title insurance whereby Arizona Title insured Community Hospital's title to a .67 acre parcel of land located in Lake Havasu City, Arizona.

We begin by reviewing the facts giving rise to this appeal. The McCulloch Corporation, developer of Lake Havasu City, desired a hospital facility in the town to make the community more attractive. Accordingly, the corporation deeded four acres of land to Mohave County in 1968. The deed contained a reverter clause which provided that the corporation retained the power to re-enter and terminate the County's estate if the property "shall ever cease to be used

for the providing of medical services to the public from and after January 1, 1974." The County subsequently built a diagnostic and treatment center on a .67 acre portion of the four acre parcel. Apparently the County ran short of funds and found itself unable to construct a larger public health facility on the four acre parcel.

Two different community groups had formed nonprofit corporations, both with the goal of providing hospital care for the Lake Havasu City community. One group was the appellee, Community Hospital, the other was Lake Havasu City Foundation Hospital (Foundation). Unfortunately, rather than cooperate, these organizations entered into a bitter rivalry which divided the entire community. The Mohave County Board of Supervisors chose Community Hospital over Foundation and developed a plan, along with the McCulloch Corporation, whereby Community Hospital was to obtain title to the four acre parcel previously deeded to the County.

The plan called for the County to partition off the .67 acre parcel upon which the diagnostic and treatment center was constructed and sell it to Community Hospital. The County purported to do so pursuant to the state statutes governing the sale of county land.

The remaining 3.33 acre parcel was purportedly deeded by Mohave County back to Transamerica Title Company of Arizona (Transamerica) as trustee for the McCulloch Corporation. Community Hospital maintained that it could not meet the requirements of the reverter clause and chose to terminate the estate in 1971, although the right to re-enter and terminate would not have arisen until 1974. Transamerica then purported to deed the 3.33 acre parcel over to Community Hospital in fee.

Community Hospital paid $150,011.00 for the .67 acre parcel, executing a promissory note secured by a mortgage. The 3.33 acre parcel was deeded by gift. Community Hospital obtained the deeds in July and October of 1971 but did not obtain title

insurance on either parcel until December 8, 1971. At that time, Community Hospital purchased a title insurance policy on *only* the .67 acre parcel, electing not to insure the title on the larger 3.33 acre parcel. At the time, both Community Hospital and Arizona Title, the insurer, were aware of the fact that a 35-bed hospital facility was to be constructed on the entire four acres, thereby integrating it with the existing diagnostic and treatment center.

Construction on the hospital progressed, as did the feud between Community Hospital and Foundation. Foundation acquired land across the street from Community Hospital and apparently obtained sufficient funding to construct a hospital of its own, however the necessary building and zoning permits were denied Foundation. Several lawsuits resulted from the conflict between Community Hospital and Foundation. At some point the two sides decided a merger between the two organizations might be in order, apparently due to Foundation's inability to obtain the necessary permits to construct its own hospital and Community Hospital's shortage of funds to complete its 35-bed hospital. The groups planned to combine the two Boards of Directors and complete the unfinished Community Hospital building with funds previously obtained by Foundation. However, before Foundation's lender would release funds for the completion of Community Hospital's building, it required a legal opinion as to the validity of Community Hospital's title on the entire four acre parcel. Attorney Michael Pierce, who had drafted the merger agreements, concluded title to the four acres was defective. Pierce recommended that an independent legal opinion be obtained. Attorney Wilbert Anderson was retained to issue a legal opinion on Community Hospital's title. Anderson agreed that title to the four acres was defective. Unfortunately the record does not disclose whether the attorneys concluded that title was defective on the entire four acre parcel or on just one of the .67 acre or 3.33 acre parcels singularly.

The failure of Community Hospital's title to the four acre parcel resulted in the collapse of the financing plan as well as the merger between Community Hospital and Foundation. In fact, Foundation resumed its battle against Community Hospital with renewed vigor. On December 21, 1972, Foundation initiated what was denominated as a "taxpayers' suit" against Community Hospital and Mohave County. The suit alleged that Mohave County had failed to comply with the applicable provisions of the Arizona Constitution [1] and with A.R.S. § 11–251(9) [2] in both selling the .67 acre parcel to Community Hospital and deeding

1. The provisions listed in the taxpayers' complaint were art. 9 § 7 which reads:

> Neither the State, nor any county, city, town, municipality, or other subdivision of the State shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation, or become a subscriber to, or a shareholder in, any company or corporation, or become a joint owner with any person, company, or corporation, except as to such ownerships as may accrue to the State by operation or provision of law.

and art. 12 § 4 which reads:

> The duties, powers, and qualifications of such officers shall be as prescribed by law. The Board of Supervisors of each county is hereby empowered to fix salaries for all county and precinct officers within such county for whom no compensation is provided by law, and the salaries so fixed shall remain in full force and effect until changed by general law.

2. At the time of the sale and conveyance back, A.R.S. § 11–251(9) provided as follows:

> The Board of Supervisors, under such limitations and restrictions as are prescribed by law, may:
>
> \* \* \* \* \* \*
>
> 9. Sell at public auction at the courthouse door, after thirty days previous notice given by publication in a newspaper of the county, and convey to the highest bidder, for cash or contract of purchase extending not more than five years from date of sale and upon such terms and conditions and for such consideration as the board shall prescribe, any property belonging to the county which the board deems advantageous for the county to sell, or which the board deems unnecessary for use by the county, and shall pay the proceeds thereof into the county treasury for use of the county.

back the 3.33 acre parcel to Transamerica, as trustee for the McCulloch Corporation.

Since the taxpayers' suit challenged Community Hospital's title to the insured .67 acre parcel, Community Hospital tendered the defense to Arizona Title, which hired attorney Joseph Miller to defend the action. Noting that the entire four acre parcel was challenged and that the hospital was nearly completed, Miller wrote to Community Hospital in January, 1973 advising it to retain separate counsel to associate with Miller in defending the suit since Community Hospital's "... loss could exceed the limits of the liability of Arizona Title Insurance and Trust Company under the policy...." Community Hospital chose its regularly retained attorney, Neal Roberts, to associate with Miller as co-counsel in defense of the suit.

On June 11, 1973, Miller filed an answer to the complaint filed in the taxpayers' suit, denying the allegations of defective title contained therein. Thereafter, little if anything else was done in regard to the suit until it was settled approximately two and one-half years later. In his testimony, Miller stated that Roberts was attempting to work out a comprehensive settlement with Foundation. Miller testified that any settlement with respect to the .67 acre parcel would require concurrent settlement of the 3.33 acre parcel, since both parcels were inextricably bound by completion of the hospital and its physical integration with the diagnostic and treatment center. Additionally, Roberts apparently sought to dispose of several other lawsuits in the settlement of the taxpayers' suit.

Prior to reaching a settlement, Roberts was disbarred and replaced by attorneys Sheldon Mitchell and Alexander Katz. Thereafter, Mitchell and Katz negotiated a settlement with Foundation and Mohave County, which had filed a mortgage foreclosure action against Community Hospital in May, 1975 for Community Hospital's alleged failure to make payments on the .67 acre parcel. The settlement required a public auction of the entire four acre parcel. The appraised value of the entire property, including improvements, was $1,692,865.20. Community Hospital was given credit for its improvements and any successful bidder, other than Community Hospital, would be required to pay approximately one million dollars in cash to Community Hospital for its improvements within fifteen days of the auction.

On March 28, 1977, eight months prior to the auction, Community Hospital made demand upon Arizona Title for the face amount of its title policy, $130,011.00. In their demand letter, Mitchell and Katz asserted that under the terms of the settlement agreement, Community Hospital would suffer damages of at least $400,000.00 attributable to Arizona Title. The demand was rejected by Arizona Title.

In November, 1977, the auction was conducted with Community Hospital as the only bidder. The entire property and the improvements thereon were purchased for a bid of $1,523,578.74, which reflected 90% of the appraised 1977 value of the property. After receiving credit for its improvements and its initial purchase price of $150,000 for the .67 acre parcel, including the diagnostic and treatment center, it cost Community Hospital an additional $307,062.62 to obtain title to the entire four acre parcel.

It is Arizona Title's contention that Community Hospital paid $182,829.44 to purchase the insured .67 acre parcel, subject to a credit of $150,011.00, the original 1971 purchase price. This would result in a net cost of $32,818.44 to regain title to the insured .67 acre parcel. Arizona Title bases its conclusion upon the allocations of value contained in the settlement agreement. Community Hospital, on the other hand, claims that an allocation is not proper and that it cost $307,062.62 to obtain title to the insured .67 acre parcel.

On February 14, 1978, Community Hospital filed suit against Arizona Title alleging breach of contract, failure to defend in good faith, and negligence. On October 25, 1979, Community Hospital's complaint was amended to add a fourth count, bad faith failure to settle.

The case went to trial on April 9, 1980 and the trial to the court without a jury concluded on April 15, 1980, at which time the court took the matter under advisement. On March 9, 1981, the court filed its findings of fact and conclusions of law, finding in favor of plaintiff Community Hospital on all four counts. The court entered judgment in favor of Community Hospital in the sum of $307,062.62 in actual damages, $50,000.00 in punitive damages, and awarded Community Hospital $50,-000.00 in attorney's fees pursuant to A.R.S. § 12–341.01, for a total amount of $407,-062.62, plus interest. This appeal followed.

Arizona Title's claims on appeal can be summarized as follows: (1) Community Hospital lacks standing to prosecute this action; (2) the trial court erred in determining Arizona Title's liability under the title insurance policy; (3) the trial court erred in determining that Arizona Title acted in bad faith by rejecting Community Hospital's demand for payment of the policy limits; (4) the trial court erred in finding that attorney Miller's inaction constituted bad faith representation; (5) the trial court erred in finding that attorney Miller's conduct constituted a *Parsons* violation; (6) the trial court erred in awarding prejudgment interest on unliquidated claims; and (7) the trial court erred in awarding attorney's fees.

We discuss each contention individually.

### STANDING ISSUE

The first issue to be addressed is Arizona Title's claim that Community Hospital lacks standing to prosecute the action. It is undisputed that Community Hospital transferred its assets and assigned all rights of recovery from this action to its assignee, Pratt Properties, Inc. However, Community Hospital asserts that Arizona Title has waived any objection, based upon an assertion that Community Hospital is not a real party in interest, since Arizona Title did not timely raise the defense below.

■ Rule 17(a), Arizona Rules of Civil Procedure, requires that "[e]very action shall be prosecuted in the name of the real party in interest." However, Rule 9(a), Arizona Rules of Civil Procedure, has been interpreted to require the issue of capacity to sue be raised by motion before the answer is filed or by way of an affirmative defense asserted in the answer. *Hurt v. Superior Court,* 124 Ariz. 45, 601 P.2d 1329 (1979); *Ballard v. Lawyers Title of Arizona,* 27 Ariz.App. 168, 552 P.2d 455 (1976). This is so because the defense of lack of capacity to sue, due to plaintiffs not being a real party in interest, is not jurisdictional and may be waived if not timely raised by the defendant. *Ballard, supra.*

■ It is undisputed that Arizona Title did not raise this defense either by motion prior to filing its answer or as an affirmative defense in its answer. However, Arizona Title asserts that the issue was raised in the joint pretrial statement of the parties. A pretrial stipulation in the context of a joint pretrial statement has the effect of amending the pleadings. *See Ries v. McComb,* 25 Ariz.App. 554, 545 P.2d 65 (1976); *see also,* Rule 6(a), Uniform Rules of Practice of the Superior Court of Arizona. However, having examined the joint pretrial statement, we are not convinced that the parties have stipulated that the standing issue was before the trial court.

Rule 6(a), Uniform Rules of Practice of the Superior Court of Arizona, provides in pertinent part:

VI. Pretrial Statements and Conferences in Civil Cases

(a) Joint Pretrial Statements. Counsel who will try the case and who are authorized to make binding stipulations shall confer and prepare a written pretrial statement, signed by each counsel, to be filed by the plaintiff within the time set by the court in the particular case, or by the applicable Local Rules of Practice, or if no time is set, then not less than five judicial days prior to the date of trial. Such pretrial statement shall contain the following:

(1) The uncontested facts deemed material;

(2) Such contested issues of fact and law as counsel *can agree* are material or applicable;

(3) A separate statement by each party of other issues of fact or law which *that party* believes to be material. (emphasis added)

The rule provides that the pretrial statement contain both a statement of contested issues of fact and law that counsel "can agree" are material or applicable and a separate statement by each party of other issues of fact or law "that party" believes to be material.

■ Arizona Title included the following under the heading "Other Issues of Fact or Law which Defendant Believes to be Material":

C. The effect, if any, of the Hospital's sale of its assets to the Lutheran Hospital and Homes Society.

We find that counsel for Community Hospital did not stipulate that the standing issue was contested; if they had, it would have been included under the heading: "Contested Issues of Fact and Law Counsel Agree Are Material or Applicable." Arizona Title's inclusion of the issue in its separate statement does not have the effect of amending the pleadings to include the defense of lack of capacity to sue since Community Hospital did not "agree" the issue was material or applicable.

■ Moreover, assuming the inclusion of the above listed issue was stipulated to by Community Hospital as material or applicable, we find the averment to the standing issue to be inadequate. Rule 9(a), Arizona Rules of Civil Procedure, provides in pertinent part:

Capacity. . . . When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by *specific negative averment*, which shall include such

supporting particulars as are peculiarly within the pleader's knowledge. (emphasis added)

As previously noted, Arizona Title listed as an issue "[t]he effect, if any" of the sale of Community Hospital's assets. This falls far short of a "specific negative averment" as required by Rule 9(a). *Cf. Ries v. McComb, supra,* (although pretrial stipulation has the effect of amending the pleadings, mere reference to "plan and/or scheme" is grossly inadequate to raise the defense of fraud and theft since Rule 9(b), Arizona Rules of Civil Procedure, requires the circumstances constituting a fraud to be stated with particularity.)

Accordingly, we hold that Arizona Title has waived any objection to Community Hospital's standing to bring suit in this action.

## LIABILITY UNDER THE POLICY

There is no question that Arizona Title is liable to Community Hospital for its failure to detect the defect in Community Hospital's title to the .67 acre parcel.[3] The question presented is the extent of Arizona Title's liability under the title insurance policy. The trial court properly noted the measure of damages to be applied in its conclusions of law under count one of Community Hospital's complaint:

2. The measure of damages for breach of a contract are those which may fairly and reasonably be considered either arising naturally, that is, according to the usual course of things, from such breach of contract itself, or were such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it. *Hadley v. Baxendale,* 1854, 9 Exch., 341.

3. Under that test, the measure of damages where as in this case, there is a total defect of title, apart from interest and attorney's fees, is the difference be-

3. The specific problem with respect to the .67 acre parcel was that the conveyance failed to satisfy A.R.S. § 11–251(9) because the sale was advertised for only 28 days rather than the

required 30 days and the Board of Supervisors did not conduct the sale at the courthouse door. *See* Footnote 2, *supra.*

tween the price paid by plaintiff when it acquired the .67 acres and the price it had to pay to get good title to the *same* property. *Burks v. Louisville Title Ins. Co.*, [95 Ohio App. 509] 121 N.E.2d 94 (Ohio 1953); *Crain v. Security Title Ins. & Guaranty Co.*, 644 P.2d 632 [sic], 6 Cal.App.2d 343; *Montemarano v. Home Title Ins. Co.*, 25 [258] N.Y. 478, 180 N.E. 241; *Glyn v. Title Guaranty & Trust Company*, 132 App.Div. 859, 117 N.Y.S. 424 (emphasis added).

■ The parties agree that it cost Community Hospital an additional $307,062.62 to acquire clear and marketable title to the *entire* four acre parcel. However, Community Hospital was insured *only* on the .67 acre parcel. Since Community Hospital is the plaintiff in this action, it bears the burden of proving the extent of its damages attributable to the defective title on the .67 acre parcel. *See Ferrell v. Inter-County Title Guaranty & Mortgage Co.*, 213 So.2d 518 (Fla.App.1968); *Goode v. Federal Title and Insurance Corp.*, 162 So.2d 269 (Fla.App.1964). This it has failed to do.

■ As an appellate court, we must review the evidence on appeal in a light most favorable to supporting the judgment of the trial court, hence the trial court's judgment will not be disturbed if there is any reasonable evidence in the record to support it. *State v. Veatch*, 132 Ariz. 394, 646 P.2d 279 (1982). Where, however, the findings or conclusions of the trial court are not supported by evidence in the record, we must reverse the trial court's decision. *Tester v. Tester*, 123 Ariz. 41, 597 P.2d 194 (App.1979).

■ Having reviewed the record before us, we find that there is no evidence supporting the trial court's finding that Community Hospital suffered a loss of $307,-062.62 as a proximate result of Arizona Title's breach under the title insurance policy on the .67 acre parcel. Community Hospital has failed to present evidence estab-

lishing a causal nexus between the defective title on the .67 acre parcel and its total loss of $307,062.62.

■ Community Hospital makes the bare assertion that it possessed clear title to the 3.33 acre parcel and that its acquisition of the entire four acre parcel through public auction was a "legal fiction" necessary to obtain clear title to the .67 acre parcel. However, Community Hospital has failed to present evidence to support this claim. Mere recital of clear title to the 3.33 acre parcel is not proof of its existence and cannot take the place of evidence. *Cf. Herring v. Railway Express Agency, Inc.*, 19 Ariz.App. 418, 508 P.2d 83 (1973) (mere recital of possible defenses is not proof of their existence and cannot take the place of evidence).

While Community Hospital did introduce into evidence a quit claim deed purporting to convey from Transamerica, as trustee for the McCulloch Corporation, to Community Hospital "... all right, title, and interest in the reversionary clause" of the 1968 deed transferring title from McCulloch Corporation to Mohave County, there is no evidence going to the legal effect or validity of the deed.

■ A quit claim deed conveys to the grantee no greater rights to the property conveyed than the grantor possessed, *Birtrong v. Coronado Building Corp.*, 90 N.M. 670, 568 P.2d 196 (1977); *Sabo v. Horvath*, 559 P.2d 1038 (Alaska 1976); it does not constitute a muniment of title. *Adamson v. Doornbos*, 587 S.W.2d 445 (Tex.Civ.App.1979).

■ The evidence presented at trial establishes that Community Hospital's title to the 3.33 acre parcel was doubtful at best. Just as the county had failed to comply with the applicable statutory provisions in selling Community Hospital the .67 acre parcel, it appears likely the county failed to comply in purporting to deed back an interest in land without complying with the provisions of A.R.S. § 11–251(9).[4]

4. The specific problem with the uninsured 3.33 acre parcel is that the gratuitous deed back of

Mohave County's interest in the property quite likely failed to comply with the provisions of

While we do not believe that Community Hospital was necessarily required to litigate the issue of whether it had clear title to the 3.33 acre parcel prior to entering into its settlement in the taxpayers' suit, it was required to prove that its alleged damages of $307,062.62 arose from the insured .67 acre parcel and not from the 3.33 acre parcel or a combination of both. There is simply insufficient evidence in the record supporting Community Hospital's claim that defective title to the .67 acre parcel caused the total loss of $307,062.62.

■ The only evidence presented at trial that provides a means of calculating Community Hospital's loss attributable to its defective title to the .67 acre parcel are the appraisals contained in the notice of public auction (exhibit 62). Separate appraisals are provided on both the .67 and 3.33 acre parcels, as well as the improvements existing upon all of the property on July 6, 1971 and those placed upon the property subsequent to that date. Community Hospital was the successful bidder at the auction, obtaining the entire four acres and improvements for a bid of $1,523,-578.74, which was 90% of the appraised 1977 value of the property. The appraisals in the notice of public auction, besides setting forth the appraised dollar amount of each parcel and the improvements, also set forth the percentage each parcel and the improvements bear in relation to the entire four acres and all of the improvements thereon. The .67 acre parcel constituted approximately 2% of the total value, while the improvements which existed on the parcel on July 6, 1971 (diagnostic and treatment center) constituted approximately 10% of the total value. Therefore the insured .67 acre parcel and the improvements thereon constitute 12% of the total value of the entire four acre parcel and improvements thereon. Since Community Hospital was given credit for the improvements made subsequent to July 6, 1971 (hospital building integrated with the diagnostic and

treatment center), there can be no loss attributable to these improvements. Therefore, the loss attributable to the .67 acre parcel constitutes the difference between 12% of the amount bid by Community Hospital ($182,829.44) and the amount paid for the .67 acre parcel with improvements by Community Hospital in 1971 ($150,011.00). Hence the loss attributable to defective title on the .67 acre insured parcel is $32,818.44. This is the extent of Arizona Title's liability to Community Hospital under the title insurance policy and count one of Community Hospital's complaint.

Accordingly, judgment under count one is modified by reducing the amount of damages to $32,818.44, there being no necessity for further proceedings requiring a remand. *See Cagle v. Carr*, 101 Ariz. 225, 418 P.2d 381 (1966); *Dolph v. Cortez*, 8 Ariz.App. 429, 446 P.2d 939 (1968); *see also, Sun City Water Company v. Arizona Corporation Commission*, 113 Ariz. 464, 556 P.2d 1126 (1976).

### REFUSAL TO SETTLE FOR POLICY LIMITS

■ Having decided that, based upon the evidence presented at trial, Arizona Title was liable to Community Hospital in the sum of $32,818.44, we conclude that Arizona Title did not act in bad faith in refusing to settle for the policy limit of $130,011.00. We find that, as a matter of law, the extent of Arizona Title's liability to Community Hospital was "fairly debatable" and that there existed a "reasonable basis" for Arizona Title's refusal to pay over the policy limit. *See Sparks v. Republic National Life Insurance Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982), *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982); *Noble v. National American Life Insurance Co.*, 128 Ariz. 188, 624 P.2d 866 (1981).

A.R.S. § 11–251(9). *See* Footnote 2, *supra.* McCulloch Corporation's right of re-entry would not arise until 1974, nearly three years after the county's purported conveyance back. More-

over, failure to satisfy the condition does not automatically terminate the estate; the right of re-entry must be exercised.

Accordingly, we reverse the trial court's judgment under count four of Community Hospital's complaint and enter judgment in favor of appellant, Arizona Title.

## INACTION BY MILLER

Article four of the title insurance policy provides, in part:

(a) The Company, at its own cost and *without undue delay* shall provide (1) for the defense of the Insured in all litigation consisting of actions or proceedings commenced against the Insured ... covered by this policy ...; *or* (2) for such action *as may be appropriate* to establish the title of the estate or interest ... as insured, which litigation or action in any of such events if founded upon an alleged defect, lien or encumbrance insured against by this policy and may pursue any litigation to final determination in the court of last resort. (emphasis added)

Under the above provision, Arizona Title was obligated to either defend Community Hospital's title to the *.67 acre* parcel or take other appropriate action to establish Community Hospital's title. Arizona Title retained Joseph Miller to defend the taxpayers' suit challenging title to the .67 acre parcel. Community Hospital later retained Neal Roberts to associate with Miller in defending the suit. The parties agree that, for almost two and one-half years, Miller did little, if anything, in regard to the taxpayers' lawsuit after filing an answer denying the allegations of defective title.

The trial court concluded that such inaction on the part of Miller, combined with the fact that Community Hospital's title to the .67 acre parcel was clearly defective and could be remedied only by a sale in conformity with A.R.S. § 11–251(9), *and* that Community Hospital possessed *clear title* to the 3.33 acre parcel, constituted a bad faith discharge of its obligations. *See Noble v. National American Life Insurance Co., supra.*

Having closely reviewed the record, we find that the trial court's conclusion is not supported by the evidence. The major flaw in the trial court's analysis is its conclusion that Community Hospital possessed clear title to the 3.33 acre parcel. As previously noted, Community Hospital has failed to present evidence establishing that it possessed title to the 3.33 acre parcel.

Although we do not necessarily approve of attorney Miller's "do nothing" strategy in the taxpayers' suit, we find that, under the particular facts of this case, such inaction did not constitute a bad faith discharge of its obligations under the title insurance policy on the part of Arizona Title.

The taxpayers' suit attacked Community Hospital's title on *both* parcels. While Miller was retained to defend title on only the .67 acre parcel, he was required to act in the best interests of his client, Community Hospital, even if as a result other interests of the client made litigation or settlement of Community Hospital's title to the .67 acre parcel more difficult or time consuming.

Miller's testimony at trial concerning Neal Roberts', and later Sheldon Mitchell's and Alexander Katz', decision to attempt to reach a comprehensive settlement concerning the entire four acre parcel is uncontradicted. At trial, the following exchanges between attorney Joseph Miller and Sheldon Mitchell, counsel for Community Hospital, took place:

Q. (By Mitchell) At this time February '73, did you, after discovering the defect in title to be fatal, meaning it was void, you told that to your client, to the hospital people?

A. (By Miller) I told it to Mr. Noye (director of Community Hospital) and I told it to Neal Roberts and I believe there was a gentleman at that time that was a member of the board named Hurdel who was in on some of these meetings; maybe one other board member.

\* \* \* \* \* \*

Q. Joe, whatever you thought might possibly happen for at least two and a half years you yourself did nothing to clear the title?

A. There was no way to clear it except have a sale and as you just said in your question, Sheldon, you could not have a sale of point 67 acres. You had to do something with the whole four acres.

Q. Right.

A. So the only way I could clear that title was to have a new sale in my opinion.

Q. What did you do in two and a half years to bring about a new sale?

A. I couldn't bring about because Noye and Roberts were trying to put an overall package together to save the entire hospital and the entire four acres.

Q. And that is something you of course wanted to do too, didn't you?

A. That was in the best interest of Lake Havasu Community Hospital.

\* \* \* \* \* \*

Q. Are you saying, Joe, that in two and a half years that you were representing the hospital when Neal and Harry were doing whatever they were doing, there was nothing you as a lawyer could do legally in the defense of this lawsuit?

A. In my judgment, no.

\* \* \* \* \* \*

Q. You were asserting the validity of a title you knew was void in the defense of that lawsuit?

A. We were in a holding pattern while Neal Roberts and Harry Noye were trying to structure a transaction.

Q. So because of that feeling you just sat back and essentially did nothing, is that correct?

A. They were doing the negotiating.

\* \* \* \* \* \*

Q. All right. Now, you in essence are saying that there was no requirement for you to take any affirmative action to perfect the estate or interest, is that what you are saying?

A. Neal Roberts didn't want any affirmative action taken. If he had taken affirmative action in that lawsuit, the whole parcel in my opinion goes back to the County.

\* \* \* \* \* \*

Q. Did they (Roberts and Noye) tell you what to do?

A. Did they tell me what to do? They didn't want the lawsuit pushed because they wanted to save their hospital and I was in favor of them working out whatever plan they could to save their hospital.

\* \* \* \* \* \*

Q. ... You had the primary obligation under the title policy to give to the insured what the policy promised to give them, a defense, an affirmative action representation; not Neal Roberts or Harry Noye but you, Joe Miller, that was your obligation, wasn't it?

A. Sheldon, I was doing what the client, the insured wanted done and that was to sit idly by while they were trying to put these various plans together to save their hospital.

■ The record clearly indicates that Community Hospital was informed that the defect in title on the insured parcel could only be remedied through resale and not only concurred in Miller's "do nothing" strategy but in fact dictated the strategy as Noye and Roberts attempted to work out an overall settlement package. Having precipitated and having later acquiesced in Miller's "do nothing" strategy, Community Hospital cannot now maintain a claim of bad faith discharge of Arizona Title's contractual obligations predicated upon Miller's inaction. *Cf. Eklund v. Safeco Insurance Co. of America,* 579 P.2d 1185 (Colo. App.1978) (where insured demanded that insurer not settle a claim upon any terms due to his belief of nonliability, the insurer could not be held liable for failing to settle within the policy limits even though two offers to settle within the policy limits had been made to insurer and rejected).

Accordingly, we reverse the judgment entered in favor of Community Hospital on count two of its complaint and enter judgment in favor of appellee, Arizona Title.

## PARSONS VIOLATION

Count three of Community Hospital's complaint is grounded upon an alleged violation of the standards of legal representation owed an insured as set forth by our supreme court in *Parsons v. Continental National American Group*, 113 Ariz. 223, 550 P.2d 94 (1976). The trial court's conclusion that attorney Joseph Miller failed to maintain undivided loyalty to his client, Community Hospital, is clearly supported by the record. Arizona Title concedes as much, noting that "technically improper" communications were made by Miller to the insurer, Arizona Title. However, Arizona Title claims these communications did not include any "confidential and privileged information to the insurer for use against the insured." We disagree.

The testimony of Myron Howard, chief counsel of the parent company of Arizona Title, indicates that he retained Miller to represent Community Hospital in the title dispute and considered that Miller also represented the interests of Arizona Title in minimizing its liability under the title insurance policy. Moreover, the correspondence between Miller and Howard, as well as between Miller and Community Hospital, clearly indicates not only a divided loyalty on the part of Miller but also a divulgence of confidential and privileged information of the insured, Community Hospital.

A letter dated February 5, 1974 from Miller to Howard is representative. In the letter, Miller urges Howard to write a letter "in relatively strong language" to Community Hospital, pointing out that the title insurance policy "does not cover any losses that are created or suffered as a result of the conduct of the insured." Miller's letter then states:

The reason I am making this suggestion is that I believe they are attempting to settle the case and set the title company up as the prime defendant in a damage action with the measure of damages to be determined by the loss they sustain in deeding the property back to the county and taking a lease for some period of time.

As you will recall, I directed a somewhat similar letter to Neal Roberts several weeks ago but from conversations in the last two days with legal counsel for Crossland and Mohave County, it would appear that Neal Roberts is still attempting to negotiate a settlement. I will be very happy to confer with you on this if you deem it necessary.

There is no question that Miller's letter to Arizona Title includes confidential and privileged information obtained by Miller as attorney for Community Hospital. It is clear that Miller continued to work as attorney for Community Hospital while his loyalty to the client was diluted by his allegiance to Arizona Title. Such conduct clearly violates the dictates of *Parsons*.

While we have previously held that the loss to Community Hospital attributable to the .67 acre parcel was $32,818.44, we do not believe Arizona Title's overall liability is so limited in light of the *Parsons* violation. However, we disagree with the trial court's conclusion that Arizona Title is liable for the full $307,062.62.

In *Parsons, supra,* our supreme court held that when an attorney, who is an insurance company's agent, uses the confidential relationship between an attorney and a client to gather information so as to deny an insured coverage under the policy [5], such conduct constitutes a waiver of any policy defense, and is so contrary to public policy that the insurance company is estopped as a matter of law from disclaiming liability under an exclusionary clause in the policy. This applies to liability above the policy limits, as well as cases defended

---

5. The same rationale applies where the information is utilized to reduce the amount of indemnification due the insured.

under a reservation of rights. *See Parsons, supra.*

Although Community Hospital has proven damages of only $32,818.44 attributable to defective title of the .67 acre parcel, it is quite possible that Miller's communications with Arizona Title resulted in Arizona Title's rejecting Community Hospital's demand for the policy limits of $130,011.00. The following excerpts from the trial testimony of Myron Howard indicate that Miller may in fact have consulted with him concerning Community Hospital's demand for the policy limits:

Q. (MR. MITCHELL) Did you discuss our demand for the policy with Joe Miller as to whether the company's liability was such you should reasonably pay the demand for the policy limits?

A. (MYRON HOWARD) I don't believe I have any recall as to whether I actually discussed this with Mr. Miller.

Q. Did you discuss it with Joe Miller?

A. I said Mr. Miller.

Q. I thought you said Roberts. Possibly you said?

A. It would be a possibility.

Q. It would have been something that would have reasonably been expected in light of your relationship with Miller in this case up to that time, isn't that true?

A. Well, yes, but I still answer the question, I can't recall.

Q. Of course, but up to that time, the date on that exhibit [demand letter], you still considered Miller to be the title company's lawyer?

A. Yes.

\*    \*    \*    \*    \*    \*

Q. What steps did you take, sir, in considering the demand for the policy limits as set forth in that exhibit? To whom did you show the letter? Did you take it in front of the claims committee or anyone else in authority in the title company?

A. I am sure I showed it to Mr. Kindred and he was the gentleman you referred to a moment ago that you met with, you and myself there and I think possibly we showed it to Mr. Was. I am not sure.

Q. And you discussed it with Joe Miller?

A. Could have, yes.

In accordance with *Parsons*, we hold that Arizona Title is estopped from denying that it would not have paid the policy limits, upon demand of Community Hospital, had Miller not communicated with and advised Arizona Title throughout his representation of Community Hospital.

We find that the trial court's conclusion that punitive damages are warranted in this case is amply supported by the record. While acting as counsel for Community Hospital, Joseph Miller divulged confidential and privileged information of the client to Arizona Title which could adversely affect the client's interests. Such conduct constitutes a reckless indifference to the interests of Community Hospital. Arizona Title is liable for such damages under the doctrine of *respondeat superior.* *See Echols v. Beauty Built Homes, Inc.,* 132 Ariz. 498, 647 P.2d 629 (1982).

Accordingly, we affirm the judgment entered in favor of Community Hospital on count three of its complaint. However, the judgment is reduced to $130,011.00 [6], the amount of the policy limits, plus $50,000.00 in punitive damages.

### INTEREST

Under count one of Community Hospital's complaint, the trial court awarded interest from July 18, 1973, the date upon which Miller wrote Arizona Title advising that title on the .67 acre parcel was completely defective.

A party is entitled to interest on the amount of his damages prior to judgment, provided the sum demanded is liquidated. *Costanzo v. Stewart Title &*

---

**6.** The amount awarded under count three is not in addition to the amount of $32,818.44 awarded under count one. Community Hospital is entitled to a *total* of $130,011.00 in *actual* damages plus the amounts awarded as punitive damages and attorney's fees.

*Trust of Phoenix*, 23 Ariz.App. 313, 533 P.2d 73 (1975). A claim is liquidated "if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion." *Arizona Title Insurance and Trust Company v. O'Malley Lumber Company*, 14 Ariz.App. 486, 496, 484 P.2d 639, 649 (1971); *Costanzo, supra*, 23 Ariz.App. at 317, 533 P.2d at 77.

▆ It is clear that the extent of Arizona Title's liability under the title insurance policy was not ascertainable at the time Miller concluded that title on the .67 acre parcel was completely defective. There were no means of ascertaining the extent of Community Hospital's damages attributable to defective title on the .67 acre parcel until the curative sale was conducted on November 7, 1977. At that point, there existed data from which it was possible to compute the extent of Community Hospital's damages. Hence, damages were not liquidated until November 7, 1977.

Accordingly, under count one, interest on the damages of $32,818.44 is to run from November 7, 1977 to December 14, 1979 at the rate of 6% per annum and thereafter at the rate of 10% per annum.

▆ Under count three of Community Hospital's complaint, we reduced the amount of the trial court's judgment to $130,011.00, the amount of the policy limits. Arizona Title's liability under count three lies in tort. However, the fact that the claim was based upon tort does not prevent the award of prejudgment interest. *Banner Realty, Inc. v. Turek*, 113 Ariz. 62, 546 P.2d 798 (1976). In fact, in the case of a liquidated tort claim, prejudgment interest is awardable as a matter of right. *Id.*

Arizona Title's liability for the full amount of the policy limits is not attributable to the extent of Community Hospital's damages resulting from defective title on the .67 acre parcel. Liability results from the actions of attorney Joseph Miller which may have resulted in Arizona Title's not paying over to Community Hospital the policy limits upon demand. While it is true that Arizona Title's liability on the *Parsons* violation was not certain until the trial court entered judgment, the amount of the damages was certain. In *Banner Realty, Inc. v. Turek, supra*, our supreme court held: "[t]here is a distinction between uncertainty as to liability as distinguished from uncertainty as to amount of damages. Uncertainty as to liability does not bar recovery of prejudgment interest on a liquidated claim." 113 Ariz. at 64, 546 P.2d at 800.

▆ Accordingly, interest under count three is to run from March 28, 1977, the date upon which Community Hospital made demand upon Arizona Title for the policy limits. While liability had not been established at that point, the actions of Miller had brought the *Parsons* violation to fruition. Interest is to run at the rate of 6% per annum from March 28, 1977 to December 14, 1979 and thereafter at the rate of 10% per annum.

▆ The trial court's award of $50,000 punitive damages was clearly unliquidated prior to judgment. In Arizona, interest does not begin to run on unliquidated claims until the rendition of the judgment. *Trollope v. Koerner*, 21 Ariz.App. 43, 515 P.2d 340 (1973). The trial court erred in awarding interest from the date of minute entry.

Accordingly, judgment under count three is further modified to award interest on the punitive damages sum of $50,000 at the rate of 10% per annum from March 9, 1981 forward.

## ATTORNEY'S FEES

Community Hospital was awarded attorney's fees pursuant to A.R.S. § 12–341.-01(A).[7] Although we have reduced the

---

7. A.R.S. § 12–341.01(A) provides:
   In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees. This section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney's fees.

amount of the judgment under count one to $32,818.44, the amount Arizona Title conceded liability for throughout the proceedings, we affirm the trial court's granting of attorney's fees. The trial court's judgment awards attorney's fees on all four counts. Under count one it is indeed questionable whether Community Hospital was the "successful party", in light of Arizona Title's pretrial concession of liability for the amount awarded in the modified judgment. However, we conclude that Community Hospital is entitled to attorney's fees under count three.

Although count three (*Parsons* violation) is a tort action, we find that attorney's fees were properly awarded pursuant to A.R.S. § 12–341.01. In *Sparks v. Republic National Life Insurance Company, supra,* our supreme court held that the test to be applied in determining whether the "arising out of contract" language of A.R.S. § 12–341.01 is applicable is whether the "action in tort could not exist *but for* the breach of the contract." 132 Ariz. at 543, 647 P.2d at 1141 (emphasis in original). *See also, Trebilcox v. Brown & Bain, P.A.,* 133 Ariz. 588, 653 P.2d 45 (App.1982).

■■■ Arizona Title was contractually required to provide legal counsel to represent Community Hospital under the terms of the title insurance policy. Attorney Miller breached his "contractual duty to exercise the utmost honesty, good faith, fairness, integrity and fidelity to the client." *Trebilcox, supra,* 133 Ariz. at 591, 653 P.2d at 48. It is clear that Community Hospital's cause of action for tort could not exist but for the breach of the attorney-client contract as well as the underlying insurance contract. Accordingly, attorney's fees were properly awarded pursuant to A.R.S. § 12–341.01.

■■■ Arizona Title takes the position that attorney's fees may not be awarded under A.R.S. § 12–341.01 since Community Hospital retained counsel on a contingency-fee basis. In *Sparks, supra,* our supreme court addressed this very issue, holding that subsection (B) [8] of the statute permits an award of attorney's fees in contingency-fee cases. The court stated:

We cannot agree that a contingency-fee agreement does not obligate a party "to pay attorney's fees from his own pocket", as defendants suggest. After obtaining a judgment, a client who has retained counsel on a contingency basis must surrender the agreed upon percentage of the judgment as remuneration. This is certainly an "expense of litigation" under subsection (B). The award of attorney's fees mitigates the burden of the expense of litigation by offsetting the amount due the attorney.

132 Ariz. at 545, 647 P.2d at 1143.

Although we have reversed the trial court's judgments in favor of Community Hospital on counts two and four, and reduced the damages awarded under counts one and three, this does not require us to reduce or vacate the award of attorney's fees in the instant case. *See Sparks, supra.*

Community Hospital requested the trial court to award it 40% of the "monies recovered", this being the amount of its contingency-fee agreement with its attorneys. Based upon the amount of Community Hospital's recovery in the trial court, this would be approximately $142,000. However, the trial court concluded that $50,000 was a reasonable sum and accordingly awarded that amount to Community Hospital.

■■■ As a result of our disposition of this case, the "monies recovered" by Community Hospital has been reduced to $180,011.00. The trial court's award of $50,000 attorney's fees is still less than 40% of the "monies recovered" by Community Hospital in this action. We believe $50,000 to be

---

8. A.R.S. § 12–341.01(B) provides:

The award of reasonable attorney's fees awarded pursuant to subsection A should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense. It need not equal or relate to the attorney's fees actually paid or contracted, but such award may not exceed the amount paid or agreed to be paid.

a reasonable sum in light of our disposition of this matter.

We note that the trial court awarded interest at the rate of 10% per annum from August 4, 1980. However, judgment awarding attorney's fees was not entered until March 9, 1981. As we noted above, interest on unliquidated claims does not begin to run until the rendition of judgment. *Trollope v. Koerner, supra.*

Accordingly, we affirm the trial court's award of attorney's fees in the sum of $50,000 to Community Hospital. We, however, modify the judgment as it pertains to the award of interest. Interest is to run at the rate of 10% per annum from March 9, 1981, the date of judgment, forward.

### CONCLUSION

The trial court's judgment in favor of Community Hospital on counts two and four of their complaint is reversed. Judgment in favor of Community Hospital on counts one and three is affirmed as modified herein.

As to count one, the judgment is modified, reducing the amount of damages to $32,818.44, with interest at the rate of 6% per annum from November 7, 1977 to December 14, 1979 and thereafter at the rate of 10%.

Judgment on count three is modified, reducing the amount of damages to $130,011.00, with interest at the rate of 6% per annum from March 28, 1977 to December 14, 1979 and thereafter at the rate of 10% per annum. The award of punitive damages in the sum of $50,000 is affirmed, though modified to award interest at the rate of 10% per annum from March 9, 1981 forward.

The trial court's award of $50,000 attorney's fees pursuant to A.R.S. § 12–341.01 is affirmed, though modified to award interest at the rate of 10% per annum from March 9, 1981 forward.

Notwithstanding that Community Hospital is entitled to judgment on both counts one and three as set forth above, the maximum amount to be paid is $230,011.00—$130,011.00 with interest at the rate of 6% per annum from March 28, 1977 to December 14, 1979 and thereafter at the rate of 10% per annum. Interest on the $50,000 punitive damages award as well as the $50,000 award of attorney's fees is to run at the rate of 10% per annum from March 9, 1981 forward.

Both parties have moved for an award of attorney's fees on appeal pursuant to Rule 21(c)(1), Arizona Rules of Civil Appellate Procedure, and A.R.S. § 12–341.01. In the exercise of our discretion we deny both motions. Each party shall bear its own attorney's fees on appeal.

CONTRERAS, P.J., concurs.

FROEB, Judge, dissenting in part, concurring in part:

This unique and complex case has been carefully analyzed by the majority. I agree with the opinion except for the portion dealing with count three of Community Hospital's complaint which is entitled "Parsons' Violation." I would modify the principal sum of the judgment from $307,062.62 to $32,818.44 and vacate the $50,000 award of punitive damages.

The basic problem which brought this litigation about was the failure of Community Hospital to obtain title insurance on the 3.33 acre parcel upon which it built the hospital. The result reached by the majority in effect requires the title company to provide this coverage anyway, notwithstanding the fact that the only title insurance involved covered the adjoining .67 acre parcel on which the diagnostic center was built.

As a consequence of title insurance existing on one parcel and not the other, Community Hospital and the title company were placed in difficult juxtaposition with each other in the quest of Community Hospital to regain marketable title to the two parcels. This quest was finally realized through settlement of the taxpayer suit

and the curative sale. The interests of Community Hospital were at all times represented by its separate counsel. Attorney Miller represented both the interest of Community Hospital as the insured under the title policy and the title company. The majority has upheld the conclusion of the trial court that there arose a conflict of interest on the part of Attorney Miller which divided his loyalty between Community Hospital and the title company. The majority concludes that this conflict caused Community Hospital a loss of at least $130,011 because the Hospital had to pay that amount and more to "buy" the 3.33 acre parcel at the curative sale and thus obtain valid title. This is where I disagree.

In my opinion there is no evidence which would support a causal connection between Attorney Miller's conduct and the cost to cure the title to the 3.33 acres. There is no showing that had Miller acted differently, the loss to Community Hospital would have been reduced. Therefore, even assuming Attorney Miller had a conflict of interest which required him to withdraw as counsel for Community Hospital, the evidence does not support an award of damages because Miller's conduct did not cause any loss which Community Hospital did not already face.

It is undisputed that Community Hospital sought as a first priority to reach a solution which would clear the title to the entire four acres. Counsel for Community Hospital, in cooperation with counsel for the title company, adroitly brought this about by the curative sale. The loss attributable to the *insured* .67 acres was $32,818.44. This is all the title company is obligated under the policy to pay. I am unable to find in *Parsons v. Continental National American Group*, 113 Ariz. 223, 550 P.2d 94 (1976), anything which would eliminate the need for Community Hospital to show that the conduct of Attorney Miller resulted in some loss beyond that which Community Hospital had already suffered by reason of the defective property titles.