DAVID AND DIANE A. BRNILOVICH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brnilovich v. Commissioner
Docket No. 11173-88
United States Tax Court
T.C. Memo 1989-583; 1989 Tax Ct. Memo LEXIS 582; 58 T.C.M. (CCH) 538; T.C.M. (RIA) 89583; October 30, 1989
James J. Everett, for the petitioners. Mark S. Pendery, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in petitioners' 1985 Federal income *583 tax of $ 12,695. Following concessions, the remaining issues are (1) whether petitioners misreported a $ 62,771 item of ordinary income as long-term capital gain, and, if so, (2) whether petitioners are liable for additions to tax under section 6653(a)(1) and 6653(a)(2). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners, David and Diane A. Brnilovich, resided in Glendale, Arizona, when they filed the petition in this case. Their timely filed joint Federal income tax return for calendar year 1985 employed the cash receipts and disbursements method of accounting. Since 1980, Mr. Brnilovich (petitioner) has been an attorney practicing in the State of Arizona. In 1982, he was retained by James and Donna Harlacher to procure grandfathered water rights to several parcels of property on their behalf. Early in 1984, with regard to one of *584 these parcels, petitioner was further retained by the Harlachers when it became apparent to them that their presumed ownership of the lot was in question. In fact, title to that lot, which had been quitclaim-deeded to the Harlachers by Mrs. Harlacher's mother, K. Keith, had previously been quitclaim-deeded by K. Keith to L. B. Keith, her then husband, as part of a 1969 property settlement. On April 4, 1984, petitioner issued a legal opinion to the Harlachers in which he opined that the Harlachers did not currently hold title to the lot, although they did have some claim to it based on the doctrine of adverse possession. It was petitioner's recommendation at that time that the Harlachers continue to use the property until 1986 in order to support that claim. By way of two instruments dated August 21, 1984, the Harlachers quitclaim-deeded ten acres of their ostensible thirty-acre interest in the property to petitioner. Petitioners reported no income from this transaction on their joint 1984 Federal income tax return. On August 22, 1984, petitioner instituted a quiet title action on behalf of the Harlachers asserting their right to the lot as against L. B. Keith. On September 5, 1985, the *585 Superior Court of Arizona granted L. B. Keith's motion for summary judgment against the Harlachers. Prior to entry of that decision, however, and prior to consideration of the Harlachers' motion for reconsideration, the parties settled the suit. By the terms of the settlement, L. B. Keith was given $ 200,000 and agreed to a consent judgment quieting title in the Harlachers. While the quiet title action was pending, the Harlachers negotiated a sale of the land to outside purchasers; that sale was completed upon settlement of the suit. On September 30, 1985, petitioners received $ 62,771 from the proceeds of the sale, which represented one third of the net amount realized following deduction of the $ 200,000 assigned L. B. Keith from the escrow account. On their 1985 joint Federal income tax return petitioners characterized this amount received as a $ 61,271 long-term capital gain and a $ 1,500 recovery of basis. Respondent determined the $ 62,771 to be ordinary income to petitioners in 1985. OPINION At issue is whether petitioners were entitled to treat the $ 62,771 payment received in 1985 as an amount realized from the sale or exchange of a capital asset. The correctness *586 of petitioners' 1984 return is not at issue in this case; however, in order to properly characterize the 1985 payment, we must determine the nature of the interest, if any, which petitioners received in 1984 as a result of the two quitclaim deeds they received in that year. Petitioners assert that receipt of the two deeds gave them a valid property interest in 1984. Having held that asset as an investment for more than six months, petitioners continue, they properly treated their gain from the disposition of that asset as long-term capital gain. In contrast, respondent asserts that receipt of the two deeds in 1984 did not vest petitioners with any interest in the property recognizable under the Internal Revenue Code. Lacking any property to hold as an investment, respondent continues, petitioners were not entitled to treat their income which coincided with the disposition of the lot as long-term capital gain. We hold for respondent. The burden of proof is on petitioners to show that respondent's notice of deficiency was erroneous. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Petitioners have not successfully carried this burden. To qualify for *587 long-term capital gain treatment, petitioners must prove, inter alia, that they held "property." Sec. 1222(3); sec. 1221. To prove that they held property, petitioners must prove, inter alia, that their transferors, the Harlachers, had property to transfer to them via the quitclaim deeds in 1984. Petitioners have not proven this premise of their argument. Property rights are determined under the applicable state law. Aquilino v. United States, 363 U.S. 509, 513 (1960); Blake v. Commissioner, 20 T.C. 721, 728 (1953). Petitioners assert that the Harlachers had title to the property by operation of the Arizona adverse possession statutes; however, they offer no factual evidence to support this claim. Without such evidence petitioners' case is deficient. Whether a party has acquired title by adverse possession is an intensely factual question, see Ariz. Rev. Stat. Ann. secs. 12-521 through 12-528 (1982), requiring proof of "each and every one of the requisite elements." Tena v. Yongolen, 24 Ariz. App. 311, 538 P.2d 398, 400 (1975), citing Conwell v. Allen, 21 Ariz. App. 383, 519 P.2d 872 (1975). *588 As stated, petitioners have proven none of these elements. Additionally, even had petitioners proven the Harlachers' ownership by adverse possession in 1984, they still would have had to overcome the language of the Court of Appeals of Arizona which points out that although "Title vests at the end of the adverse possession period * * *, it is not a marketable title of record until there has been a judicial determination of such title." Babo v. Bookbinder Financial Corp., 27 Ariz. App. 73, 551 P.2d 63, 64 (1975). There was, of course, no judicial determination of the Harlachers' title prior to their transfer of the quitclaim deeds, or thereafter. Neither does the 1985 consent judgment support petitioners' argument that the Harlachers had transferable title in 1984. The consent judgment is simply a memorialization of the parties' settlement agreement. In no way does it comment upon, or is it dispositive as to the Harlachers' title prior to its entry. See United States v. Armour & Co., 402 U.S. 673, 681-682 (1971). Deprived of one of its necessary logical foundations, petitioners' argument cannot sustain itself. In Arizona, a quitclaim deed *589 conveys no greater rights in the subject matter of the conveyance than the transferor had. Lake Havasu Community Hospital, Inc. v. Arizona Title Insurance and Trust Co., 141 Ariz. 363, 687 P.2d 371, 380 (Ariz. Ct. App. 1984), overruled on another issue, Barmat v. John and Jane Doe Partners A-D, 155 Ariz. 519, 747 P.2d 1218 (1987). Since petitioners have not proven that the Harlachers had an interest in the land in 1984, we find that petitioners received nothing more from them in that year than an unsecured, contingent promise of a share of any proceeds the Harlachers might reap from asserting a claim to the property in the future. As respondent suggests, this arrangement approximates a contingency fee agreement. The entering of such an agreement is not a taxable event for a cash-method taxpayer. Vestal v. United States, 498 F.2d 487, 490-491 (4th Cir. 1974). It is only upon the occurrence of the contingency and the consequent receipt or constructive receipt of income that a cash-method taxpayer recognizes an item of gross income. Secs. 1.446-1(c)(1)(i), 1.451-1(a), Income Tax Regs.
Petitioners have sometimes asserted that the *590 transfer from the Harlachers to them was a gift. They have not, however, proven this assertion. We think that there was no "detached and disinterested generosity" motivating the Harlachers' transfer, but that it was intended as compensation for services. See Commissioner v. Duberstein, 363 U.S. 278 (1960). Accordingly, the cash received by petitioners in 1985 was ordinary income to them in that year. Finally, respondent in his answer asserted that petitioners were liable for additions to tax under section 6653(a)(1) and 6653(a)(2). Having raised this new matter in his answer, respondent bears the burden of its proof. Rule 142(a). Respondent has not carried his burden to show that petitioners' position on their 1985 return was negligent within the meaning of section 6653(a). See Neely v. Commissioner, 85 T.C. 934, 947 (1985). Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code, as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩