## FLOYD NEWCOMB v. LELAND MEISS AND ANOTHER.

116 N. W. (2d) 593.

August 3, 1962—No. 38,317.

*Richards, Montgomery, Cobb & Bassford, William G. Bale,* and *Greer Lockhart,* for appellants.

*Holt & Prescott,* for respondent.

MURPHY, JUSTICE.

This is an appeal from an order denying a new trial and from a judgment in a personal injury action in which there was a verdict for the plaintiff. The appeal is primarily based on alleged prejudicial error in the court's instructions to the jury.

Viewing the record in the light most favorable to the plaintiff, as we are required to do, it appears that one of the defendants, Leland Meiss, a resident of Gridly, Illinois, after completing high school came to Minneapolis in January 1957 to attend Humboldt Institute, where he took a railroad traffic course. At that time he was 18 years of age. On his return to Minneapolis after a visit at his home, he brought with him a 1948 Chevrolet automobile. This automobile had an Illinois license and was registered in the name of his father, Charles Meiss, who is also a defendant. There was evidence that the car had been purchased by the son, but because he was a minor, the registration was in the name of the father. There was also evidence that the father had used the car during the son's absence.

On Saturday evening, March 30, 1957, the plaintiff, Floyd Newcomb, his wife, and two other couples were driving west on Lake Street in Minneapolis. At the intersection of Lake Street and Portland Avenue, Newcomb brought his car to a stop in obedience to a traffic signal. The defendant Leland Meiss was behind him driving the Chevrolet and was accompanied by some other young people. As Leland approached the Newcomb car he slowed down and then permitted his car to roll into the rear of the Newcomb car and strike its rear bumper. The impact moved the Newcomb car about a half car length. The rear bumper of the Newcomb car was slightly dented. No damages are claimed for personal injuries arising from the contact.

After the contact Newcomb went to the rear of his automobile to inspect the damage. As he was bending over the rear bumper the defendant Leland Meiss struck him on the head over the left ear with a tire iron. Newcomb was stunned but quickly recovered. Leland then returned to his own car and the plaintiff followed him, opened the partly closed door, and a struggle ensued. The plaintiff's brother then appeared and parted the two antagonists. It occurred to Newcomb that he did not have the license number of the Meiss car, so he went to the front of the Meiss car and wrote it down. He then proceeded toward the curb on the right side of his automobile. This route necessarily placed him in the street area. At about that time the defendant Leland Meiss decided to leave the scene of the accident and started out, proceeding to the right in a path between the Newcomb car and the curb. Newcomb saw the Meiss car approaching and attempted to jump out of the way but was too late. He was hit on the left leg by the defendants' car and thrown down, striking the right side of his head against the street. Leland was not aware of the fact that the plaintiff had been struck by his car. The plaintiff was dazed from his fall and needed the assistance of his brother to get up off the pavement.

The plaintiff's doctor found lacerations on his scalp and a black and blue mark on his left leg. He has suffered pain from the injury to the leg and since the accident has sustained a 3-percent loss of hearing in the right ear. The plaintiff's medical expert testified that in his opinion the loss of hearing was caused by the fall when plaintiff was struck by the defendants' car. The defendant Leland Meiss was later

convicted of second-degree assault. It is agreed that Leland had never been in any trouble with the law prior to this occurrence, and there is no rational explanation for his conduct. Shortly after the occurrence the plaintiff instituted an action on the ground of assault, which was later dismissed. This action is brought for damages on the ground of negligence.

The trial court instructed the jury to find the defendant Leland Meiss negligent as to the first contact between the two automobiles but to restrict the damages to a nominal amount, such as $1. It submitted to the jury the issues of negligence, proximate cause, and damages resulting from injuries sustained by the plaintiff as a result of the second contact. The court held that as a matter of law the plaintiff was not contributorily negligent.

■ The principal error assigned by counsel for defendants is that the court failed to submit the issues to the jury on the correct legal theory. He insists the damages resulted from an assault involving the defendants' intentional negligence and the jury should have been so instructed. At the close of plaintiff's case he moved for a directed verdict—

"* * * upon the grounds that the plaintiff has failed to sustain his burden of proof on the issues of negligence and proximate cause, and that any damages proximately resulting from any negligence on the part of Leland Meiss—the evidence shows that with regard to the bumping incident between the Meiss car and Newcomb car that was intentional on the part of Leland Meiss, and therefore was not negligence; the evidence further discloses that the assault was intentional, not negligent. The evidence with regard to striking the plaintiff while pulling away from the scene is that Leland Meiss said he did not intend to strike the plaintiff, but this was part of an entire crime, and in the criminal law intent is inferred from the wrongful act itself."

The court denied this motion, expressing the view that it would be a strange state of the law if a strong case of negligence could be defeated by an admission that the defendants' acts constituted assault or intentional negligence. The trial court correctly took the view that the mere fact that the defense chose to label the action as one for assault

would not deprive the plaintiff of damages flowing from the occurrence out of which the action arose. But defense counsel in his brief argues: "The distinction between intentional tort and negligence goes to the very heart of this case, and the failure of the trial court to recognize the distinction prejudiced defendants." In further developing this argument he states: "Although Leland Meiss was responsible for Floyd Newcomb's injuries, he and his father have a right to be held responsible only upon the correct legal theory."

In considering the defendants' argument it is important to keep in mind that the plaintiff's case was based on negligence and tried on that theory. The complaint alleged two incidents—(a) the collision between the two automobiles and (b) the striking and throwing of plaintiff to the street by the negligent operation of the defendants' automobile while leaving the scene of the accident. No claim was made for damages resulting from the first incident. The plaintiff sought damages resulting from the second contact. The defendants' answer was in the form of a general denial as to negligence and alleged that the damages were caused by the contributory negligence of the plaintiff. Preliminary to the trial the defendants' insurer questioned coverage under its contract of insurance. Counsel for the insurance company, who presumably had control of the defense, informed the court that he was appearing pursuant to a notice of reservation of rights and nonwaiver agreement entered into between the company and the defendants.[1] He accordingly undertook the delicate task of attempting

[1] At the opening of the trial the following colloquy took place between the court and counsel for the defendants:

"Mr. Lockhart: Your Honor, for the record I would like to state that, for the reasons that I have previously told you about, the * * * Company is defending this action under a reservation of rights and non-waiver agreement signed and entered into by both Charles Meiss and Leland Meiss. That because of the Meiss' personal exposure—the possibility of personal exposure in this case because of the admitted assault I wrote another letter to them on March 18, 1960, advising them of their rights to employ personal counsel at their own expense to represent them personally on this matter. It is my understanding that this morning they did talk to some attorneys, but have decided to go ahead.

to establish in one action both the issue of the defendants' tort liability to the plaintiff and the issue of the insurer's contract liability to the defendants. He hoped to have the latter issue determined in favor of the insurer by establishing that the defendants' acts were willful and thus not within the coverage of the policy. The defense counsel accordingly insisted throughout the trial that the plaintiff's case was essentially one based on assault and battery and consequently the defendants should have prevailed. In view of the fact that the defense was being conducted under a reservation of rights, it was not surprising that the trial court subjected it to close scrutiny. In a thorough and helpful memorandum the trial court has noted that after the charge the defense counsel complained that the issue of negligence should not have been submitted to the jury. The memorandum recites that the defense counsel "stated that he could not possibly defend on that

---

"The Court: Well, I read these pleadings. I don't see that we have any complication here. They are suing purely on negligence on the grounds that your party bumped into them, and as a result of that he was injured. Now, if they want to bring an action for assault and battery, that would have to be a different action; it wouldn't be an action here, and I couldn't allow an amendment at this late a time when these people are here from Illinois, so I wouldn't include in that both an action brought on the grounds of negligence and one on assault and battery, a new cause of action entirely, so if you move for dismissal, that's the end of this case, and what they do on the other is none of my business, and I don't suppose it is any of yours either.

"Mr. Lockhart: That's exactly the point I was bringing up—

"The Court: So I don't think I need to caution these people that they must defend on an assault and battery action, because one has not been brought, and, of course, at this late a time I don't see as I should allow an amendment where these people are not prepared to meet a separate issue entirely.

"Mr. Lockhart: It is my understanding that the plaintiff doesn't intend to amend, but there will be proof of an assault during the trial, and I was just trying to foresee the problem of an amendment at a later date to conform with the proof.

"The Court: Well, of course, if you litigate it by consent is one thing, but according to the pleadings, there is nothing stated here that I could construe it to be an action in assault and battery."

charge, but he was defending on the grounds that the actions of the defendant were not negligent, but willful." In oral argument before this court defense counsel complained that the trial court should have submitted a special verdict or general verdict with interrogatories. There is no assignment of error on this point, nor do we find in the record the form or substance of the verdict or interrogatories requested ᵢby the defendants. The trial court was apparently of the impression that counsel's attempted defense was not wholly consistent with the personal interests of the defendants and refused to permit the jury to consider, except as to the first contact, the issue of assault or intentional tort. The trial court observed:

"* * * I do not believe [defense counsel] is in a position now to insist upon a finding of willful or intentional tort. If the jury held it was an intentional tort, and this was an issue in the case, if the defendant sued the insurance company it could be set up as an estoppel by verdict. Counsel would thus be appearing in the interest of the insurance company, and not that of defendant."

We have no reason to doubt that counsel believed in good faith that the defense he asserted was consistent with his obligations as an attorney to the insured. He explains that if successful in establishing that the damages grew out of intentional negligence there could be no ultimate liability on the part of the defendants because the statute of limitations had operated to prevent recovery. Although this aspect of the defense was not discussed in the court below, it appears that the defense counsel proceeded to assert the defense of assault or intentional negligence upon the assumption that the court would not permit an amendment to the complaint which would permit recovery on that ground.[2] The attitude of the trial court expressed in its memorandum, however, may well be understood when it is considered that if defense counsel had in fact succeeded in his objective, the trial court might nevertheless have felt compelled in the interest of justice to permit an amendment to the complaint,[3] in which event the de-

---

[2]See footnote 1, *supra*.

[3]At the time this action began the statute of limitations had not run

fendants might have been deprived of the right of indemnification for the amount of a verdict returned against them.

Counsel for the defendants wholly agrees that the idea of an attorney appearing adversely to the interests of his client is not only repugnant to the trust relations between lawyer and client but to the fundamental concept of justice itself. This rule applies with equal force to counsel who undertakes to represent a policyholder. He owes to the policyholder the same "undeviating and single allegiance" that he would owe to the insured if retained and paid by him. American Employers Ins. Co. v. Goble Aircraft Specialties, Inc. 205 Misc. 1066, 1075, 131 N. Y. S. (2d) 393, 401; see, Mutual Service Cas. Ins. Co. v. Overholser, 239 Minn. 243, 58 N. W. (2d) 268.

This case points up the danger which defense counsel may encounter by defending under a reservation of rights under circumstances where the defense may not be consistent with the interests of both the insurer and the insured. Obviously the trial court in the interest of preserving the integrity of the judicial process is required to closely scrutinize such a defense. The misunderstanding between counsel and the court which occurred in this case might well have been avoided if the liability of the insurance company had been properly determined in separate proceedings.

■ The trial court directed a verdict in favor of the plaintiff for nominal damages resulting from the first contact between the two automobiles, which the defendant Leland Meiss said was intentional. Although no claim was made for damages resulting from this collision, we gather that the court submitted the directed verdict because of the repeated insistence of defense counsel that intentional negligence was involved. Apparently the court felt that defense counsel would thus be given the benefit of his theory to the extent that the evidence supported it. The trial court, however, did submit to the jury the issues of negligence, proximate cause, and damages as to the second contact.

on a cause of action for assault and battery or intentional tort (Minn. St. 541.07), and an amendment would relate back to the date the negligence action was instituted. Rules 15.02 and 15.03 of Rules of Civil Procedure; Heyn v. Braun, 239 Minn. 496, 59 N. W. (2d) 326.

It is the claim of the defendants that this instruction is confusing, misleading, and prejudicial.

We have carefully examined the instruction as a whole and are satisfied that no prejudice occurred. The jury was repeatedly told that insofar as intentional damages were involved the amount thereof was to be limited to $1.[4] The court clearly distinguished between damages which might be allowed as a result of the first contact and damages which might be allowed to the plaintiff for personal injuries as to the second contact in the following instructions:

"We have an odd situation in this case concerning the question of proximate cause as to the resulting damages. You must assess damages in this case if you hold the plaintiff is entitled to anything more than nominal damages for the resulting injuries sustained as a direct and proximate cause of the second contact. You will not assess any damages that were solely the result of the assault and battery committed on the plaintiff by the defendant, Leland Meiss. In other words, you must not reason that there is no difference whether the injuries were committed because of the assault and battery or the driving into the plaintiff and knocking him to the pavement, as Leland Meiss was responsible for both. If you reason in that manner, you will be disregarding these instructions. The damages for injuries must have emanated from the second contact with the car and not because of the assault and battery."

In Manion v. Tweedy, 257 Minn. 59, 64, 100 N. W. (2d) 124, 128, we reviewed the rules governing the sufficiency of instructions and cited Cameron v. Evans, 241 Minn. 200, 208, 62 N. W. (2d) 793, 798, where we said:

---

[4]The following are excerpts from the court's charge:

"* * * so you can only assess nominal damages as a result of this first contact. Nominal damages means damages in some insignificant sum, such as one dollar or so."

"* * * then you can only find on this first contact, which means you can only find just nominal damages, meaning in the vicinity of one dollar."

"* * * We have one verdict where you find that the plaintiff has failed to shoulder the burden of proof in regard to negligence on the second contact. In that case there you will only give the sum of approximately one dollar, * * *."

"* * * the charge of the trial court must be viewed in its entirety and from a practical and common-sense point of view. The trial court is allowed considerable latitude in the language used, and a new trial will not be granted where requested instructions are refused when the general charge fairly and correctly states the applicable law. All that is required is that the charge as a whole convey to the jury a clear and correct understanding of the law. It is unnecessary that every possible opportunity for misapprehension be guarded against. If the charge fairly lays down the law of the case, it is sufficient."

See, also, Wilson v. Davidson, 219 Minn. 42, 53, 17 N. W. (2d) 31, 37; Gordon v. Pappas, 227 Minn. 95, 100, 34 N. W. (2d) 293, 296; Barnes v. Northwest Airlines, Inc. 233 Minn. 410, 420, 426, 47 N. W. (2d) 180, 187, 190; Lott v. Davidson, 261 Minn. 130, 109 N. W. (2d) 336.

■ It is next asserted that the court erred in instructing the jury that the plaintiff was free of contributory negligence as a matter of law. No exception was taken to the instruction. The point was raised on motion for a new trial. It is well recognized that it is only in the clearest of cases where the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them that the question for determination becomes one of law for the court. Rosin v. International Harvester Co. 262 Minn. 445, 115 N. W. (2d) 50; Kedrowski v. Czech, 244 Minn. 111, 69 N. W. (2d) 337. Applying this test to the standard of conduct observed by the plaintiff at the scene of the accident, it should be conceded that after the first contact the plaintiff had a right to stop, examine whatever damage occurred to both cars, and comply with statutory requirements existing under the conditions.[5] It is true that after the defendant Leland Meiss struck the plaintiff and the plaintiff pursued him to his car an altercation followed. We do not feel that we have to pass upon the reasonableness of the plaintiff's conduct under the provocation to which he was subjected. It seems clear from the record that the altercation had terminated when it occurred to Newcomb that he should get the license

---

[5]Minn. St. 169.09.

number of the defendants' car. This he had a right to do and was properly upon the street for that purpose. In doing so he did not as a man of reasonable prudence expose himself to foreseeable injury by the defendant. We think the trial court was correct in its view that:

"* * * It was not unlawful for the plaintiff to copy the license number of defendants' car even though he had a suspicion that the defendant might flee. He had no reason to believe that the defendant would run him down when he could see the plaintiff would be endangered. In my opinion he could not be held guilty of contributory negligence under such a state of the evidence."

We said much the same thing in Lee v. Zaske, 213 Minn. 244, 248, 6 N. W. (2d) 793, 795, in a somewhat similar situation:

"* * * We cannot see how a man of ordinary prudence could reasonably anticipate that any driver would be likely to come speeding through the space between the Wagner and the Streit cars."

■ There is no merit to the argument that the trial court erred in instructing the jury on the effect of Minn. St. 170.21, subd. 9, which defines "owner" as "a person who holds the legal title of a motor vehicle," and the provisions of § 170.54[6] of the Safety Responsibility Act. It is not contended that there was no evidence in the record to support this instruction. The complaint is that the effect of the instruction was to shift the burden of proof as to ownership of the automobile in question to the defendants. It appears from the instructions that the jury was told:

"There is an inference that one driving another's vehicle is driving that vehicle with the permission of the owner. The burden of proof

---

[6]Section 170.54 provides: "Whenever any motor vehicle, after Laws 1945, Chapter 285, becomes effective, shall be operated upon any public street or highway of this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

to prove the ownership of the car that defendant was driving and its driver was the agent of the owner at this time is upon the plaintiff."

This instruction followed Frye v. Anderson, 248 Minn. 478, 80 N. W. (2d) 593, and Carey v. Broadway Motors, Inc. 253 Minn. 333, 91 N. W. (2d) 753. We do not think it can fairly be said that the jury was given the notion by the court's instruction that the presumption shifted the burden of proof on the issue of ownership.

We have carefully examined the remaining errors assigned by the appellant. They are without merit and do not require discussion.

Opinion of May 25, 1962, is withdrawn and the foregoing is substituted in place thereof.

Affirmed.