550 P.2d 94

Ruth **PARSONS**, a single woman, Dawn Parsons and Gail Parsons, minors, by and through their guardian ad litem, Donald S. Robinson, and Michael Smithey, by his guardian ad litem, Appellants,

v.

CONTINENTAL NATIONAL AMERICAN GROUP, Appellee.

No. 12223–PR.

Supreme Court of Arizona, In Banc.

May 24, 1976.

Rehearing Denied June 22, 1976.

224

Robertson, Molloy, Fickett & Jones, P. C. by Michael J. Meehan, Burton J. Kinerk, Tucson, for appellants.

Chandler, Tullar, Udall & Richmond by D. B. Udall, Tucson, for appellee.

GORDON, Justice:

Appellants Ruth, Dawn and Gail Parsons obtained a judgment against appellant Michael Smithey, and then had issued and served a writ of garnishment on appellee, Continental National American Group (hereinafter referred to as CNA). The Superior Court of Pima County entered judgment in favor of the garnishee, CNA and from this judgment appellants appealed. The Court of Appeals, Division Two, reversed the judgment of the Superior Court, 23 Ariz.App. 597, 535 P.2d 17 (1975). Opinion of the Court of Appeals vacated and judgment of the Superior Court of Pima County reversed, and it is ordered that the judgment be entered in favor of appellants in the sum of $50,000.

We accepted this petition for review because of the importance of the question presented. We are asked to determine whether an insurance carrier in a garnishment action is estopped from denying coverage under its policy when its defense in that action is based upon confidential information obtained by the carrier's attorney from an insured as a result of representing him in the original tort action.

Appellant, Michael Smithey, age 14, brutally assaulted his neighbors, appellants Ruth, Dawn and Gail Parsons, on the night of March 26, 1967.

During April, 1967 Frank Candelaria, CNA claims representative, began an in-

vestigation of the incident. On June 6, 1967 he wrote to Howard Watt the private counsel retained by the Smitheys advising him that CNA was "now in the final stages of our investigation," and to contact the Parsons' attorney to ascertain what type of settlement they would accept. Watt did contact the Parsons' attorney and requested that a formal demand settlement be tendered and the medical bills be forwarded to Candelaria. On August 11, 1967 Candelaria wrote a detailed letter to his company on his investigation of Michael's background in regards to his school experiences. He concluded the letter with the following:

"In view of this information gathered and in discussion with the boy's father's attorney, Mr. Howard Watts, and with the boy's parents, I am reasonably convinced that the boy was not in control of his senses at the time of this incident.

"It is, therefore, my suggestion that, and unless instructed otherwise, I will proceed to commence settlement negotiations with the claimant's attorney so that this matter may be disposed of as soon as possible."

Prior to the following dates: August 15, 1967, August 28, 1967, and October 23, 1967, Candelaria tried to settle with the Parsons for the medical expenses and was unsuccessful.

On October 13, 1967 the Parsons filed a complaint alleging that Michael Smithey assaulted the Parsons and that Michael's parents were negligent in their failure to restrain Michael and obtain the necessary medical and psychological attention for him. At the time that the Parsons filed suit they tendered a demand settlement offer of $22,500 which was refused by CNA as "completely unrealistic."

CNA's retained counsel undertook the Smithey's defense and also continued to communicate with CNA and advised him on November 10, 1967:

"I have secured a rather complete and confidential file on the minor insured who is now in the Paso Robles School for Boys, a maximum-security institution with facilities for psychiatric treatment, and he will be kept there indefinitely and certainly for at least six months * * *.

"The above referred-to confidential file shows that the boy is fully aware of his acts and that he knew what he was doing was wrong. It follows, therefore, that the assault he committed on claimants can only be a deliberate act on his part."

After CNA had been so advised they sent a reservation of rights letter to the Smitheys stating that the insurance company, as a courtesy to the insureds, would investigate and defend the Parsons' claim, but would do so without waiving any of the rights under the policy. The letter further stated that it was possible the act involved might be found to be an intentional act, and that the policy specifically excludes liability for bodily injury caused by an intentional act. This letter was addressed only to the parents and not to Michael.

In preparing for trial the CNA attorney retained to undertake the defense of the Smitheys interviewed Michael and received a narrative statement from him in regards to the events of March 26, 1967, and then wrote to CNA: "His own story makes it obvious that his acts were willful and criminal."

CNA also requested an evaluation of the tort case and the same attorney advised CNA: "Assuming liability and coverage, the injury is worth the full amount of the policy or $25,000.00."

On the issue of liability the trial court directed a verdict for Michael's parents on the grounds that there was no evidence of the parents being negligent. This Court affirmed, *Parsons v. Smithey*, 109 Ariz. 49, 504 P.2d 1272 (1973). On the question of Michael's liability the trial court granted plaintiff's motion for a directed verdict after the defense presented no evidence. and there was no opposition to the motion.

Judgment was entered against Michael in the amount of $50,000.

The Parsons then garnished CNA, and moved for a guardian ad litem to be appointed for Michael which was granted by the trial court. On November 23, 1970 appellee Parsons offered to settle with CNA in the amount of its policy limits, $25,000. This offer was not accepted.

CNA successfully defended the garnishment action by claiming that the intentional act exclusion applied. The same law firm and attorney that had previously represented Michael represented the carrier in the garnishment action.

■ Appellants contend that CNA should be estopped to deny coverage and have waived the intentional act exclusion because the company took advantage of the fiduciary relationship between its agent (the attorney) and Michael Smithey. We agree.

The attorneys, retained by CNA, represented Michael Smithey at the personal liability trial, and, as a result, obtained privileged and confidential information from Michael's confidential file at the Paso Robles School for Boys, during the discovery process and, more importantly, from the attorney-client relationship. Both the A.B.A. Committee on Ethics and Professional Responsibility and the State Bar of Arizona, Committee on Rules of Professional Conduct have held that an attorney that represented the insured at the request of the insurer owes undivided fidelity to the insured, and, therefore, may not reveal any information or conclusions derived therefrom to the insurer that may be detrimental to the insured in any subsequent action. The A.B.A. Committee on Ethics and Professional Responsibility in Informal Opinion Number 949 stated:

"If the firm does represent the insured in the personal injury action, to subsequently reveal to the insurer any information received from the insured for possible use by the insurer in defense of a garnishment proceeding by the in-jured person, would be a clear violation of both Canon 6 and Canon 37 regarding confidences of a client. A successful defense of the garnishment proceeding by the insurer would be contrary to the interests of the insured, because if the insurer is not obligated to pay the judgment, execution against the insured can be expected. The result would not be different in practical effect from a suit directly against the insured to escape liability under the policy.

"If the firm does not defend the insured in the personal injury action, the firm cannot reasonably expect the attorney who does represent the insured to furnish either to the firm or to the insurer, for use in a garnishment action by the injured person against the insurer, information that attorney learns during the course of defending the insured, since that attorney should not be expected to breach his professional obligations by furnishing information Canons 6 and 37 prohibit him from furnishing." August 8, 1966.

The Arizona Ethics Opinion No. 261 adopted November 15, 1968 stated:

"A.B.A. Informal Opinion C728 makes it very clear that the inquiring attorney is the attorney for the insured, B, even though the attorney would be paid by G Insurance Company. The undivided fidelity owed by the attorney, then, is to B and not to G Insurance Company.

"* * * it was unethical for the inquiring attorney to represent the insurance company in an action against the insured, after judgment against the insured, to declare that the policy did not provide coverage. A full reading of that opinion and in particular the last paragraph thereof, leads us to this conclusion. That opinion ended as follows:

'Is it now ethical for you to represent the company in an action against the insured to declare that the policy does not cover? We believe that to do so without full disclosure and full consent on the part of the insured would be a violation

of Canon 6. Your connection with the case on behalf of the insured no doubt has resulted in the development of confidences of a nature that should in good conscience require you to decline representation of the company in a case so intimately tied to your original litigation. This is particularly true when one of the ideas involved is not only to be fair but to give all appearances of fairness.' * * *."

■ The State Bar Committee in its Arizona Ethics Opinion No. 282 adopted May 21, 1969 stated:

"No better statement of the basis for our position on this question occurs to us than the following quotation from the Blakslee article cited above (55 A.B.A. Jour. at p. 263):

'Although the opinions of the Committee state that the lawyer represents both the insurer and insured, *it is clear that his highest duty is to the insured and that the lawyer cannot be used as an agent of the company to supply information detrimental to the insured.* The lawyer is a professional retained pursuant to the terms of a contract between the insurer and insured. The company has a right to expect that the issue of liability for injury and damages will be effectively and forcefully presented by the lawyer it has chosen. It has agreed, by its contract, to pay damages once they are determined.

'The client, on the other hand, in order to obtain an insurance policy, has given up the right to direct the incidents of the trial by agreeing that the company shall have the right to choose the attorney. This also is fair since it is the company that will ultimately pay the judgment. *But counsel should not be expected to communicate information received in confidence or to betray confidences lodged in them by trusting clients.* To do so would not only destroy public confidence in the legal profession, but also would make defense attorneys investigators for carriers. That the company has not satisfied itself concerning coverage by its other, independent methods, is no compelling reason why defense counsel should be asked to betray the trust reposed in him by the insured. The fact that the company may be required to pay a monetary judgment does not alter the situation, since the company voluntarily has assumed this contractual obligation by virtue of its existence as an insurer. Its contractual obligation, voluntarily assumed, should not be permitted to be used as the basis for converting the defense counsel into something beyond a lawyer defending a client." (Emphasis supplied.)

The attorney who represents an insured owes him "undeviating and single allegiance" whether the attorney is compensated by the insurer or the insured. *Newcomb v. Meiss,* 263 Minn. 315, 116 N.W.2d 593 (1962).

■ The attorney in the instant case should have notified CNA that he could no longer represent them when he obtained any information (as a result of his attorney-client relationship with Michael) that could possibly be detrimental to Michael's interests under the coverage of the policy.

■ The attorney representing Michael Smithey in the personal injury suit instituted by the Parsons had to be sure at all times that the fact he was compensated by the insurance company did not "adversely affect his judgment on behalf of or dilute his loyalty to [his] client, [Michael Smithey]". Ethical consideration 5–14. Where an attorney is representing the insured in a personal injury suit, and, at the same time advising the insurer on the question of liability under the policy it is difficult to see how that attorney could give individual loyalty to the insured-client. "The standards of the legal profession require undeviating fidelity of the lawyer to his client. No exceptions can be tolerated." *Van Dyke v. White,* 55 Wash.2d 601, 349 P.2d 430 (1960). This standard is in accord with Ethical Consideration 5–1.

"EC 5–1. The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client."

■ The attorney in the present case continued to act as Michael's attorney while he was actively working against Michael's interests. When an attorney who is an insurance company's agent uses the confidential relationship between an attorney and a client to gather information so as to deny the insured coverage under the policy in the garnishment proceeding we hold that such conduct constitutes a waiver of any policy defense, and is so contrary to public policy that the insurance company is estopped as a matter of law from disclaiming liability under an exclusionary clause in the policy. *Employers Casualty Company v. Tilley*, 496 S.W.2d 552 (Tex.1973). In the *Tilley* case the Texas Supreme Court also noted that such conduct on the part of an attorney and insurance carrier has been the subject of litigation in other jurisdictions especially in regards to the situation where an attorney representing the carrier does not fully and completely disclose to the insured the specific conflict of interest involved.

"Conduct in violation of the above principles by the insurer through the attorney selected by it to represent the insured has been condemned by the highest courts of several other jurisdictions. In *Perkoski v. Wilson*, 371 Pa. 553, 92 A.2d 189 (1952); *Tiedtke v. Fidelity & Casualty Company of New York*, 222 So. 2d 206 (Fla.1969); *Bogle v. Conway*, 199 Kan. 707, 433 P.2d 407 (1967); *Crum v. Anchor Casualty Company*, 264 Minn. 378, 119 N.W.2d 703 (1963); *Merchants Indemnity Corp. v. Eggleston*, 37 N.J. 114, 179 A.2d 505 (1962); and *Van Dyke v. White*, 55 Wash.2d 601, 349 P.2d 430 (1960), analogous conduct in violation of such principles was held to

preclude or estop the insurer from denying coverage or liability. See also general criticisms and consequences of such conduct discussed in *Meirthew v. Last*, 376 Mich. 33, 135 N.W.2d 353 (1965); and *Newcomb v. Meiss*, 263 Minn. 315, 116 N.W.2d 593 (1962)." *Employers Casualty Company v. Tilley*, 496 S.W.2d at 559.

■ Appellee urges that the personal liability matter was defended under a reservation of rights agreement and this agreement had the effect of allowing the insurance company to investigate and defend the claim and still not waive any defenses. We hold that the reservation of rights agreement is not material to this case because the same attorney was representing conflicting clients. Appellee further urges that the procedure followed in the instant case is provided for by statute in Arizona. A.R.S. § 20–1130 states inter alia:

"Without limitation of any right or defense of an insurer otherwise, none of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder:

\*      \*      \*      \*      \*      \*

"3. Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim."

Appellee misconstrues the protection offered to the carrier under A.R.S. § 20–1130. This statute does not grant to a carrier the right to engage an attorney to act on behalf of the insured to defend a claim against the insured while at the same time build a defense against the insured on behalf of the insurer. This conflict of interest constitutes a source of prejudice upon which the insured may invoke the doctrine of estoppel. See *Pacific Indemnity Co. v. Acel Delivery Service, Inc.*, 485 F.2d 1169 (1973), cert. den., 415 U.S. 921, 94 S. Ct. 1422, 39 L.Ed.2d 476 (1974).

■ Appellee further urges that if the appellants are entitled to a judgment against the appellee insurance company the only

judgment they are entitled to is in the amount of coverage $25,000.00. We do not agree. The evidence shows that the insurance company was advised by their legal counsel that if they were liable the injury was "worth the full amount of the policy." The evidence further shows that CNA could have settled the Parsons' claim against Michael Smithey well within the policy limits and refused to do so on the basis that the settlement was "completely unrealistic." It is clear from the record that the carrier failed to enter into good faith settlement negotiations. *Farmers Insurance Exchange v. Henderson*, 82 Ariz. 335, 313 P.2d 404 (1957). In the instant case the further fact that the carrier believed there was no coverage under the policy and so refused to give any consideration to the proposed settlements did not absolve them from liability for the entire judgment entered against the insured. *State Farm Auto Ins. Co. v. Civil Service Emp. Ins. Co.*, 19 Ariz.App. 594, 509 P.2d 725 (1973). Opinion of the Court of Appeals vacated; judgment of the trial court reversed and judgment entered in favor of appellants Parsons in the sum of $50,000.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.