857 F.2d 549
 MANZANITA PARK, INC., an Arizona corporation,
Plaintiff-Counter-Claim-Defendant/Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA; Land Speed Insurers
Agency, Inc.; Haas & Wilkerson, and Jack Jordan,
Defendants-Counter-Claimants/Appellees.
 No. 87-1787.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 13, 1987.
Decided Sept. 13, 1988.
 
 1
 Joseph A. Schenk and Paula S. Bickett, Beus, Gilbert, Wake & Morrill, Phoenix, Ariz., for plaintiff-counter-claim-defendant/appellant Manzanita Park, Inc.
 
 
 2
 Michael K. Kennedy and Kevin E. O'Malley, Gallagher & Kennedy, Phoenix, Ariz., for defendant-counter-claimant/appellee Ins. Co. of North America.
 
 
 3
 John A. Miller and Janet Napolitano, Lewis and Roca, Phoenix, Ariz., for defendants-counter-claimant/appellees Land Speed Insurers Agency, Inc., Haas & Wilkerson, and Jack Jordan.
 
 
 4
 Appeal from the United States District Court for the District of Arizona.
 
 
 5
 Before GOODWIN and FLETCHER, Circuit Judges and KING,* District Judge.
 
 SAMUEL P. KING, Senior District Judge:
 I. BACKGROUND
 
 6
 In this diversity action, Manzanita Park, Inc., the owner of Manzanita Park Speedway in Phoenix, Arizona, appeals from a grant of summary judgment in favor of defendants Insurance Company of North America ("INA"), Land Speed Insurers Agency, Inc. ("Land Speed"), Haas & Wilkerson, and Jack Jordan. We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.
 
 
 7
 In 1970, INA began providing Keith Hall, Manzanita's president and sole shareholder, with racetrack insurance. Around that time, Hall asked INA representative Jack Jordan to provide coverage for Manzanita's potential liability to racetrack officials who might be hurt during a racing event. Jordan told Hall that such coverage was available under a special participants' coverage endorsement for an additional premium, and Hall agreed to pay for it. In 1975, INA issued policy No. ALB 55489, effective February 18, 1975 to April 1, 1976. The coverage provided by this policy is at the core of the dispute now before us.
 
 
 8
 Under the special participants' endorsement, coverage was provided to "all persons taking part in a racing meet including, but not limited to, drivers, pit crew, and race officials." However, the policy also contained an exclusionary clause which said:
 
 This insurance does not apply:
 
 9
 ....
 
 
 10
 (g) to bodily injury to an employee of the insured arising out of or in the course of his employment by the insured.
 
 
 11
 Neither Hall nor any other person at Manzanita was aware of the employee exclusion. No one at Manzanita had read the policy, and INA did not bring the exclusionary clause to Manzanita's attention.
 
 
 12
 On March 12, 1976, a race flagman named Norman Zeeman was struck and injured by a racing automobile at Manzanita Speedway. Anticipating that Zeeman would sue Manzanita, INA warned Manzanita in a January, 1978 reservation of rights letter that the employee exclusion rendered coverage questionable. Following subsequent investigation, INA became satisfied that Zeeman was not an employee and in an April, 1978 letter explained that there were no coverage issues. The letter instructed Manzanita to contact INA in the event a suit was initiated.
 
 
 13
 In May of 1978, Zeeman filed a complaint against Manzanita in Arizona state court framing two alternative claims: (1) Manzanita was liable to Zeeman as his employer under Ariz.Rev.Stat. Sec. 23-907 for failing to provide him with workers' compensation coverage; and (2) Zeeman was an independent contractor entitled to recover against the racetrack for its negligence. Manzanita tendered the defense of the lawsuit to INA.
 
 
 14
 After reviewing the complaint, on July 14, 1978 INA wrote Manzanita a second reservation of rights letter. That letter explained that it was INA's position that Zeeman was not an employee and that INA would provide Manzanita with a defense, but that INA would not indemnify Manzanita if the trial court determined Zeeman to be an employee. Furthermore, the letter warned that "in the event such a determination is made by the trial court, you may wish to employ separate counsel at your own expense to assist you further in the defense."
 
 
 15
 INA provided Manzanita with an attorney named Ben Thomas. Thomas adopted the defense strategy of proving that Zeeman was an independent contractor rather than an employee in order to preserve the defenses of contributory negligence and assumption of risk, which were not available against the claim for failure to provide workers' compensation coverage. Thomas filed a motion on Manzanita's behalf for partial summary judgment that Zeeman was an independent contractor, which the district court denied.
 
 
 16
 On June 12, 1980, four days before trial, Zeeman's attorney and Thomas jointly stipulated that Zeeman would dismiss the independent contractor claim and proceed solely on the allegation that he was an employee of Manzanita injured in the course of his employment, pursuant to Ariz.Rev.Stat. Sec. 23-907. Zeeman's purpose in this was to preclude Manzanita from raising the defenses of contributory negligence and assumption of risk. Thomas' motivation for entering the stipulation does not appear from the record.
 
 
 17
 At trial, Thomas attempted to prove that Zeeman was not an employee so that Manzanita would not be liable for failing to provide workers' compensation coverage. However, the jury found in favor of Zeeman and awarded him $190,178.23. INA has refused to indemnify Manzanita on the ground that the policy specifically excludes employees from its coverage.
 
 
 18
 On January 26, 1984, Manzanita filed a complaint in federal district court in Arizona. Count I sought a declaration that the insurance policy issued by INA covered the Zeeman judgment. Count VI alleged bad faith refusal by INA to satisfy the judgment. Count VII alleged that INA breached its fiduciary duty to Manzanita by controlling the Zeeman litigation without informing Manzanita of a conflict of interest between INA and Manzanita.
 
 
 19
 Counts II, III and IV of Manzanita's complaint sought relief from Jordan for negligently failing to provide the coverage requested by Manzanita, breach of contract, and misrepresentation. Count V alleged that two companies with whom Jordan was associated, Land Speed and Haas & Wilkerson, were vicariously liable for the acts of Jordan.
 
 
 20
 The district court granted summary judgment in favor of all of the defendants, and Manzanita now appeals.
 
 II. DISCUSSION
 Standard of Review
 
 21
 We review the district court's grant of summary judgment de novo. Augustine v. McDonald, 770 F.2d 1442, 1444 (9th Cir.1985). Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be rendered:
 
 
 22
 if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 
 
 23
 "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir.1987). The moving party has the burden of demonstrating the absence of a genuine issue of material fact, and all permissible inferences from the evidence must be drawn in favor of the nonmoving party. National Indus. Inc. v. Republic Nat'l Life Ins. Co., 677 F.2d 1258, 1265 (9th Cir.1982).
 
 
 24
 A. Grant of Summary Judgment for INA on Coverage and Bad Faith Issues
 
 
 25
 The district court granted summary judgment for INA on Manzanita's claims that the INA policy covered the Zeeman judgment and that INA denied coverage in bad faith. Manzanita contends that there is a genuine issue as to whether Zeeman was an employee. INA argues that the district court correctly concluded that Manzanita is collaterally estopped by Zeeman from relitigating the employee issue. We agree with Manzanita.
 
 
 26
 Under Arizona law, there are five requirements for the use of collateral estoppel to preclude litigation of issues previously litigated: (1) the issue was actually litigated in a previous proceeding; (2) there was a valid and final decision on the merits; (3) resolution of the issue was essential to the decision; (4) there is common identity of the parties; and (5) there was a full and fair opportunity to litigate the issue. J.W. Hancock Enter. v. Ariz. St. Reg., 142 Ariz. 400, 690 P.2d 119, 129 (Ct.App.1984). "The application of collateral estoppel is committed to the sound discretion of the trial court." Greenblatt v. Drexel Burnham Lambert, Inc., 763 F.2d 1352, 1360 (11th Cir.1985).
 
 
 27
 The first three of these requirements are clearly satisfied by the Zeeman litigation. As to the fourth issue, common identity of the parties, Arizona applies the rule that collateral estoppel may be used defensively by a nonparty against a party to a prior proceeding. See Standage Ventures, Inc. v. State, 114 Ariz. 480, 562 P.2d 360, 364 (1977); Spettigue v. Mahoney, 8 Ariz.App. 281, 445 P.2d 557 (1968). Thus, because INA is asserting collateral estoppel defensively, it is sufficient that Manzanita was a party to the prior Zeeman proceedings.
 
 
 28
 However, problems arise in regard to the requirement of a full and fair opportunity to litigate. Manzanita argues that it was denied this opportunity because its attorney, Thomas, had a conflict of interest between defending Manzanita and insulating INA from its obligation to indemnify Manzanita were Zeeman to be adjudged an independent contractor. The district court reasoned that, because Zeeman proceeded to trial on the sole theory that he was an employee of Manzanita and Manzanita defended on the ground that Zeeman was an independent contractor, there was no conflict of interest.
 
 
 29
 We believe that the district court viewed the conflict of interest question too narrowly. Under Arizona law, a conflict of interest exists when "the injured person's claim against the indemnitee is such that it could be sustained on different grounds, one of which is within the indemnitor's obligation to indemnify and another of which is not." Farmers Ins. Co. of Ariz. v. Vagnozzi, 138 Ariz. 443, 675 P.2d 703, 708 (1983) (quoting Restatement (Second) of Judgments Sec. 58 (1982)); see also United Serv. Auto. Assoc. v. Morris, 154 Ariz. 113, 741 P.2d 246, 250-53 (1987); Fulton v. Woodford, 26 Ariz.App. 17, 545 P.2d 979, 982 (1976). While the record does not reveal Mr. Thomas' actual motivation for stipulating to the dismissal of the independent contractor claim, it is clear that INA was relieved of potential indemnification obligations once that claim was dismissed. If Manzanita won the case, there would of course be no occasion for indemnification. If Manzanita lost on the claim for failure to provide workers' compensation, the policy's employee exclusion would apply. Thomas squarely faced a conflict of interest under the above definition before he agreed to the stipulation. That this conflict had been resolved, in Manzanita's favor, by the time of trial is not dispositive.
 
 
 30
 Manzanita argues that this conflict of interest negates any collateral estoppel effect of the Zeeman case pursuant to Vagnozzi. The plaintiff there was injured when the defendant struck him during a basketball game, and filed suit on a theory of negligence. The defendant's insurance policy covered liability for negligence, but expressly excluded coverage for intentional acts. In exchange for a promise by the plaintiff not to execute on his personal assets, the defendant promised not to oppose a motion for summary judgment on the negligence issue.
 
 
 31
 The insurer brought a declaratory judgment action seeking a determination that its policy did not cover the injuries, which the court did not rule on until summary judgment had been granted for the injured party on the issue of negligence. The court subsequently granted summary judgment in favor of the insurer on the declaratory relief issue, finding that the defendant had acted intentionally and therefore that the injury was outside the policy's coverage. The injured party appealed, arguing that collateral estoppel precluded the insurer from relitigating the question of intent.
 
 
 32
 The general rule in Arizona is that if an insurance company has a duty to defend the insured, it is bound under the doctrine of collateral estoppel by those facts determined in the action against the insured which are essential to the judgment of liability, whether or not it elects or refuses to defend. Vagnozzi, 675 P.2d at 705-06, citing Hartford Acc. and Indem. Co. v. Villasenor, 21 Ariz.App. 206, 517 P.2d 1099 (1974); Globe Indem. Co. v. Blomfield, 115 Ariz. 5, 562 P.2d 1372, 1374 (Ct.App.1977). However, the Vagnozzi Court recognized that the identity of interest which justifies applying collateral estoppel in the general case does not exist when an
 
 
 33
 investigation by the insurer reveals facts which tend to place the claim outside coverage of the policy, yet the question of coverage depends on facts to be litigated in the tort suit. The insurer's interest in defending the claim while restricting its obligation to the terms of the policy gives rise to a conflict of interest.
 
 
 34
 Vagnozzi, 675 P.2d at 706. The court resolved this issue by holding that:
 
 
 35
 where there is a conflict of interest between an insured and his insurer, the parties will not be estopped from litigating in a subsequent proceeding those issues as to which there was a conflict of interest, whether or not the insurer defended the original tort claim.
 
 
 36
 Id. at 708. Thus, if the rule of Vagnozzi applies, collateral estoppel does not preclude Manzanita from relitigating the employee issue in this case.
 
 
 37
 INA asserts that Vagnozzi is distinguishable in that it "is limited to correcting the abuse which would flow from allowing insureds to manipulate the record in underlying litigation to the detriment of an absent insurer." Therefore, it argues, Vagnozzi applies only where the insured and the plaintiff conspire so as to invoke coverage under the insurance policy. However, the Vagnozzi Court expressly refrained from deciding the case on the manipulation issue: "we hesitate to condone such sharp practices. But because of our disposition of the merits of this appeal, it is unnecessary to further discuss or consider the agreement." Id. at 707.
 
 
 38
 INA also contends that Vagnozzi recognizes an exception to the operation of collateral estoppel only in favor of a nonparty insurer, while Manzanita is the insured and was a party to the Zeeman case. However, the Vagnozzi Court did not expressly make such a distinction, and the broad language of the opinion indicates that no such limitation was intended:
 
 
 39
 we think the better rule is to suspend the operation of collateral estoppel where there is an adversity of interests. We hold that where there is a conflict of interest between an insured and his insurer, the parties will not be estopped from litigating in a subsequent proceeding those issues as to which there was a conflict of interest, whether or not the insurer defended in the original tort claim.
 
 
 40
 Id. at 708. INA's related argument that Vagnozzi does not apply to insureds because the insured must typically rely upon the underlying judgment against it to prove its right to indemnification from the insurer similarly must fail in light of the broad sweep of the quoted language.
 
 
 41
 Moreover, the Vagnozzi opinion expressly incorporates Sec. 58 of the Restatement (Second) of Judgments (1982). Id. Illustration Four of that section indicates that where an insurer unsuccessfully assumes the defense of a claim against the insured in the face of a conflict of interest between the insurer and insured, the insured is permitted to relitigate factual questions in a subsequent suit against the insurer seeking payment of the resulting judgment. Although the opinion does not expressly reference this illustration, at a minimum it defuses INA's contention that the rationale behind the rule applies only to the insurer and not to the insured.
 
 
 42
 Finally, INA contends that Vagnozzi is inapposite because it involved an attempt to use collateral estoppel offensively, a practice which the Arizona courts have in the past rejected. See Standage Ventures, Inc. v. State, 114 Ariz. 480, 562 P.2d 360, 364 (1977); Spettigue v. Mahoney, 8 Ariz.App. 281, 445 P.2d 557 (1968). Although a recent Arizona case has thrown the status of offensive collateral estoppel into some uncertainty, see Wetzel v. Arizona State Real Estate Dept., 151 Ariz. 330, 727 P.2d 825 (Ct.App.1986), cert. denied, --- U.S. ----, 107 S.Ct. 3186, 96 L.Ed.2d 674, we need not and do not decide whether it would apply here. The Vagnozzi opinion rests upon different grounds entirely and its holding is not so limited.
 
 
 43
 We therefore conclude that the conflict of interest which Thomas faced before stipulating to dismiss the independent contractor claim precludes the operation of collateral estoppel with respect to the coverage issue.[1]
 
 
 44
 Therefore, summary judgment was inappropriate as to Counts I and VI. We reverse, and remand to the district court for further proceedings as to these counts.
 
 
 45
 B. Grant of Summary Judgment for INA on Breach of Duty Claim
 
 
 46
 Count VII of Manzanita's complaint alleged that INA breached its fiduciary duty to Manzanita when Thomas stipulated to the dismissal of the negligence claim without advising Manzanita of the effect this would have on INA's liability under the policy. The district court granted summary judgment in INA's favor on this claim on the grounds that INA was not in a fiduciary relationship with Manzanita. We disagree.
 
 
 47
 The district court rested its ruling on Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co., 140 Ariz. 383, 682 P.2d 388, 402 (1984), which holds that the duty of an insurance agent to the insured is measured by tort law rather than fiduciary principles. The court characterized that duty as being one of reasonable skill, care and diligence. However, the duty owed by the insurer who assumes the defense of the insured's lawsuit to the insured was more directly addressed by the Arizona Supreme Court in Parsons v. Continental Nat'l American Group, 113 Ariz. 223, 550 P.2d 94 (1976).
 
 
 48
 Parsons held that an insurer was estopped to deny coverage and had waived an intentional act exclusion of a policy because the attorney retained by the insurer to defend the insured had given the insurer information obtained in the course of representing the insured which would help the insurer invoke the exclusion. 550 P.2d at 97-99. The Court arrived at this holding by applying the rule that a lawyer owes "undeviating fidelity" to his client. Id. at 98. Because the insurance company may not "[take] advantage of the fiduciary relationship between its agent (the attorney) and [the insured]", id. at 97, the insurer was bound by the conduct of its agent which violated that relationship. Id. at 99; see also Fulton v. Woodford, 26 Ariz.App. 17, 545 P.2d 979 (Ct.App.1976) (duty of insurer to fully inform insured of conflict of interest when undertaking defense of insured under reservation of rights); 14 G. Couch & M. Rhodes, Couch On Insurance 2d, Sec. 51:78 at 565-566 (2d ed. 1982).
 
 
 49
 The clear indication is that Arizona law holds the insurer who undertakes to defend its insured to the standard of fiduciary care assumed by the attorney whom it appoints to conduct the defense. As a predicate of this relationship, Manzanita was entitled to be informed of the conflict of interest and its consequences, and of the early opportunity to have independent advice and counsel. Fulton v. Woodford, 545 P.2d at 982.
 
 
 50
 We review de novo a district court's interpretation of questions of state law. Matter of McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). In light of Parsons, we find that Arizona law holds an insurer to the same standard of fiduciary care as the attorney it appoints to represent its insured. We therefore reverse and remand to the district court for further proceedings as to this count.
 
 
 51
 C. Denial of Summary Judgment on Waiver Issue
 
 
 52
 Manzanita moved for summary judgment on the ground that INA waived its right to deny coverage under the employee exclusion. The district court denied the motion without discussion.
 
 
 53
 Manzanita argues that INA waived the employee exclusion in April of 1978, just before Zeeman filed his complaint, by sending a letter in which INA stated that "we have determined that there are no coverage issues between Manzanita and INA as were raised in our previous letter of January 17, 1978." In the January letter referred to, INA had raised the possibility that the employee exclusion applied. INA reasserted its right to exclude coverage under the employee exclusion in a letter dated July 14, 1978. Manzanita contends that the April, 1978 letter constituted a nonrevocable waiver of noncoverage.
 
 
 54
 Arizona employs the generally accepted definition of waiver as the intentional relinquishment of known rights. See Murphey v. Valenzuela, 95 Ariz. 30, 386 P.2d 78, 80 (1963); Northern Ariz. Gas Service, Inc. v. Petrolane Transp., Inc., 145 Ariz. 467, 702 P.2d 696, 705 (Ct.App.1984).
 
 
 55
 As a general rule, in order to waive a policy provision or a forfeiture, there must be a prior knowledge of the circumstances, a waiver being the intentional relinquishment of a known right and requiring both knowledge of the existence of the right and an intention to relinquish it.... A waiver will not be implied where the insurer did not have full knowledge of all the material facts.
 
 
 56
 16B Appleman, Insurance Law and Practice, Sec. 9086 at 536-39 (1981). Whether INA had knowledge of all the pertinent facts when it wrote the letter in question is subject to dispute. At that time, INA had done its own investigation and concluded that Zeeman was not an employee. Shortly thereafter, Zeeman filed the complaint against Manzanita, alleging in one count that Zeeman was an employee. Thus, there is a genuine issue of fact as to whether INA had knowledge that Zeeman would claim damages as an employee at the time INA wrote the waiver letter. Absent full knowledge of all material facts, a waiver cannot be implied.
 
 
 57
 Moreover, to hold otherwise on these facts would create an untenable situation in which the insurer would be bound by any preliminary assessment of its coverage liability, even were further investigation to reveal that the incident was not within the policy's scope. In effect, the rule suggested by Manzanita would mean that an insurer could not give its client a preliminary opinion that its claim was covered without incurring an obligation to cover it. We believe that Arizona would reject such a rule. See Stafford v. International Harvester Co., 668 F.2d 142, 148 (2d Cir.1981), citing Bernhardt v. Polygraphic Co. of Am., Inc., 350 U.S. 198, 208-209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring) (in absence of state law, federal court adopts approach that it predicts the state court would adopt under same circumstances). Accordingly, we affirm the district court's denial of summary judgment on this claim.
 
 
 58
 D. Grant of Summary Judgment as to Sufficiency of INA's Reservation of Rights
 
 
 59
 In opposing INA's motion for summary judgment, Manzanita argued that INA was precluded from denying coverage because it failed to provide Manzanita with a timely and sufficient reservation of rights. If an insurer defends its insured pursuant to a contractual duty, it must do so under a timely and sufficient reservation of rights in order to later dispute coverage. Vagnozzi, 675 P.2d at 708. The district court concluded that the facts established that INA had made a timely and sufficient reservation of rights and that there was no genuine issue of material fact to prevent granting summary judgment in favor of INA. Manzanita now argues that there is a genuine issue of material fact.
 
 
 60
 INA points out that on July 14, 1978, it sent Manzanita a letter which stated:
 
 
 61
 [a]s you know, our liability policy specifically excludes injury claims of any employee. It is our impression from the investigation conducted thus far that Norman Zeeman was not an employee of Manzanita speedway. However, this is an issue that may be interpreted differently by the courts. If, in fact, in the wisdom of the court it is determined that Norman Zeeman was, indeed, an employee, then our policy would not respond in damages for any judgment rendered in favor of Mr. Zeeman by virtue of the exclusion.
 
 
 62
 For Manzanita's part, it submitted a deposition of Keith Hall, Manzanita's president, which indicates that Hall might not have understood the above letter. Manzanita also submitted evidence that, subsequent to sending the letter, Thomas had told Hall that INA was still considering the possibility that the policy would cover Manzanita in the event that a judgment were returned on the grounds that Zeeman was an employee.
 
 
 63
 The letter is clear and unambiguous in reserving INA's rights under the exclusion. Manzanita cites no authority for the proposition that the sufficiency of the letter should be determined in accordance with the subjective interpretation of Manzanita's president. Manzanita does not contest the timeliness of the letter. Thus, even accepting Manzanita's facts as true, INA adequately reserved its rights by sending the letter.
 
 
 64
 Accordingly, the district court's grant of summary judgment for INA on this issue is affirmed.
 
 
 65
 E. Grant of Summary Judgment for Jordan, Land Speed, and Haas & Wilkerson
 
 
 66
 Manzanita's complaint sought relief from Jordan for negligently failing to provide the coverage requested, misrepresentation, and breach of contract. Land Speed and Haas & Wilkerson were alleged to be vicariously liable for the acts of Jordan.
 
 
 67
 In ruling on a motion for summary judgment filed by Jordan, Land Speed, and Haas & Wilkerson, the district court determined that Manzanita's complaint stated causes of action and that all three counts involved genuine issues of material fact. However, the district court granted summary judgment on the grounds that the claims were barred by the applicable statutes of limitations. Manzanita now appeals. We reverse as to the negligence and misrepresentation claims, and affirm as to the breach of contract claim.
 
 1. Negligence & Misrepresentation
 
 68
 The applicable statutes of limitations are two years for the negligence claim, Ariz.Rev.Stat. Sec. 12-542 (1982), and three years for the misrepresentation claim, Ariz.Rev.Stat. Sec. 12-543 (1982). The sole issue is when the statutes began to run.
 
 
 69
 In Arizona, a cause of action for negligence accrues "when the plaintiff knows, or in the exercise of reasonable diligence should have known, of the defendant's negligent conduct," Sato v. Van Denburgh, 123 Ariz. 225, 599 P.2d 181, 183 (1979), and only after a plaintiff has also suffered actual injury or damage. Amfac Distrib. Corp. v. Miller, 138 Ariz. 152, 673 P.2d 792, 793 (1983). Also, a claim does not accrue before "the plaintiff is first able to sue." Sato, 599 P.2d at 183; Cheatham v. Sahuaro Collection Serv. Inc., 118 Ariz. 452, 577 P.2d 738 (Ct.App.1977). The same standard applies to an action for misrepresentation. Tovrea Land and Cattle Co. v. Linsenmeyer, 100 Ariz. 107, 412 P.2d 47, 63 (1966); Coronado Dev. Corp. v. Superior Ct., 139 Ariz. 350, 678 P.2d 535, 537 (Ct.App.1984).
 
 
 70
 The district court found that Manzanita knew or should have known of the Jordan defendants' negligence and misrepresentation at least by the time it received the second reservation of rights letter from INA in July of 1978. Based on this finding, the court held that the limitations periods had expired by July of 1981, two and a half years before Manzanita filed its complaint. The court, however, made no finding as to the second requirement, the occurrence of actual injury or damage.
 
 
 71
 a. The Occurrence of Manzanita's Injury.
 
 
 72
 We reverse because Manzanita's "injury" triggered the commencement of the limitations period. Suit was commenced within a month of the occurrence of injury. As the Arizona Supreme Court reiterated in Amfac, "even where a plaintiff has discovered actual negligence, if he has sustained no damages, he has no cause of action. Only when he has sustained damages is he able to sue." 673 P.2d at 794.
 
 
 73
 This requirement is key. We find that at the earliest, Manzanita was damaged when INA finally and officially denied coverage in January 1984, at which time Manzanita was forced to commence suit against INA to establish coverage. Even then, the bulk of its damages were still speculative. On the date of issuance of the policy, Manzanita could not have suffered any actual damages. Given our holding today that denies res judicata effect to the state court finding that Zeeman, the flagman, was an employee, the coverage issue still remains to be decided. Whether Manzanita has suffered damage due to a failure of coverage is an open question.
 
 
 74
 Manzanita relies on Amfac to support the proposition that damages were not sustained until INA denied coverage in January 1984. Amfac holds that an action for legal malpractice does not accrue until there has been a final adjudication and judgment on appeal in the case in which the alleged malpractice occurred. Otherwise, "the element of injury or damage remains speculative and remote, thereby making premature the cause of action for professional negligence." 673 P.2d at 796.
 
 
 75
 The Jordan defendants counter by arguing that Amfac is limited to situations where legal malpractice occurs during the course of litigation. See 673 P.2d at 797-99; Arizona Management Corp. v. Kallof, 142 Ariz. 64, 688 P.2d 710, 714 (Ct.App.1984). In Kallof, a legal malpractice case involving the negligent drafting of a settlement agreement, the issue was whether the cause of action accrued when the settlement was drafted, or much later when a judgment was entered in a subsequent suit confirming that certain master leases which the defendant had represented as being included in the settlement were null and void. The court held that the action arose when the settlement was drafted, the point at which the appellant lost rights because of the attorney's negligence. 688 P.2d at 713. Because "[n]either the policies nor the considerations relating to damages expressed in AMFAC are applicable to malpractice occurring in a nonlitigation context", the Court of Appeals found Amfac inapposite. Id.
 
 
 76
 We need not analogize from Amfac and Kallof to determine the occurrence of damages in Manzanita's action for insurance agent malpractice. These attorney malpractice cases do not negate basic principles governing statutes of limitations in negligence and misrepresentation actions. A plaintiff must still have suffered "actual damage or injury" that often does not occur until certain issues are litigated and finally determined. Jordan's conduct with regard to Zeeman did not injure Manzanita until INA denied coverage, which happened only after the jury found Zeeman was an employee. Had the jury decided the other way, INA would have covered the loss and Manzanita would have had no claim against the Jordan defendants.
 
 
 77
 Kallof is also distinguishable on its facts. There, the appellant "lost rights" in remunerative leases that were tangible and quantifiable, giving rise to actual damages that were "ascertainable and not speculative and thus appellant began to sustain actual damages from the day the agreement was entered into." Because the settlement agreement was deficient, appellant did not acquire rights to master leases of certain properties and thereby suffered monetary loss from the day of the settlement forward. 688 P.2d at 713. Here, whether Zeeman's claim is covered by the policy was unclear at the time the policy was issued and is still unclear. The "lost rights" if any were not tangible and no damages had accrued or could be quantified when the policy was issued. Indeed, possibly, no rights were lost.
 
 
 78
 While most of Manzanita's damages remain entirely speculative pending resolution of the Zeeman "employee" issue, we conclude that Arizona law directs us to find that damage occurred as of INA's final refusal to cover the Zeeman judgment in January 1984. At that time, Manzanita was forced to expend legal fees to compel coverage. Though such fees are but a minor element of the damages Manzanita will sustain if Zeeman is not covered by the policy, a cause of action may arise "before the [plaintiff] sustains all, or even the greater part, of the damages occasioned by his attorney's [or insurance agent's] negligence." Kallof, 688 P.2d at 714. The attorney's fees satisfy the requirement of "any appreciable and actual harm." Id.
 
 
 79
 Our decision is also guided by Gibbons v. Badger Mutual Ins. Co., 11 Ariz.App. 485, 466 P.2d 36 (1970), in which an Arizona court held that an insured's actionable injury at the hands of its agent occurred on the date of the insurance company's express denial of coverage. In Gibbons, the court found that the insured's action against his agent for negligence and fraud in failing to transfer coverage from one business property to another accrued upon the insurer's official notification to the insured that it would not cover a fire loss, not upon the earlier date when fire destroyed the property nor the date upon which the insured requested the transfer of coverage.
 
 
 80
 Reading Kallof, an attorney malpractice case, to compel a finding of "injury" at the time of Manzanita's policy's issuance is also contrary to the holdings of the majority of negligence and fraud cases against insurance agents. Even where a policy, upon issuance, clearly fails to cover a loss that the insured thought would be included, most courts find that legal injury has not occurred until the insured actually suffers the unprotected loss. See, e.g., Chiapetta v. Clark Assocs., 521 A.2d 697, 699 & n. 3 (Me.1987); Weninegar v. S.S. Steele & Co., 477 So.2d 949 (Ala.1985); Kunz v. Buckeye Union Ins. Co., 1 Ohio St.3d 79, 437 N.E.2d 1194 (1982); Lipitz v. Washington Nat'l Ins. Co., 513 F.Supp. 606 (E.D.Pa.1981) (applying Pennsylvania law); Austin v. Fulton Ins. Co., 444 P.2d 536 (Alaska 1968). Thus, even if Manzanita's policy clearly failed to cover flagmen, these courts would find Manzanita's loss could have occurred no earlier than the date Zeeman was injured.
 
 
 81
 b. Manzanita's Knowledge of Jordan's Negligence and Fraud.
 
 
 82
 Because we find that Manzanita's damages did not occur until the official denial of coverage in January 1984, the same month in which Manzanita filed its lawsuit claiming negligence and misrepresentation, the statute of limitations does not bar the claims, regardless of when Manzanita "knew or should have known" of Jordan's alleged negligence and misrepresentations. Thus we need not review the district court's finding that Manzanita's knowledge dates from its receipt of INA's second reservation of rights letter.[2]
 
 2. Breach of Contract
 
 83
 The limitations period on a breach of oral contract is three years. Ariz.Rev.Stat. Sec. 12-543. For a cause of action to accrue for limitation purposes, some event in the nature of a breach of contract must have occurred. Western Cas. & Sur. Co. v. Evans, 130 Ariz. 333, 636 P.2d 111, 114 (Ct.App.1981), citing Maguire v. Hibernia Savings & Loan Soc'y, 23 Cal.2d 719, 146 P.2d 673 (1944). Because, taking Manzanita's allegations as true, Jordan's failure to provide coverage for race participants as requested by Hall constituted a breach of their oral agreement, the statutory period had long since run by the time Manzanita filed this action.
 
 
 84
 We therefore reverse the district court's grant of summary judgment in favor of defendants Jordan, Land Speed and Haas & Wilkerson on the negligence and misrepresentation claims, and affirm as to the breach of contract claim.
 
 
 
 *
 The Honorable Samuel P. King, Senior United States District Judge, District of Hawaii, sitting by designation
 
 
 [1]
 Because of our decision on the conflict of interest issue, we do not reach Manzanita's argument that collateral estoppel should not apply because the jury verdict in Zeeman was the result of jury compromise
 
 
 [2]
 We note, however, that the letter does not inform Manzanita of an actual, as opposed to speculative, injury. The letter opined that Zeeman was not an employee, and stated that it would deny coverage only if a court found otherwise. At least one other court, in an action that was similarly litigated prior to final resolution of the insurer's coverage, found that the insured "knew or should have known that his insurance broker sold him an insurance policy which was inadequate because it afforded incomplete coverage" on the day the insurer disclaimed liability and declined to provide a defense, not before. American Home Assurance Co. v. Osbourn, 47 Md.App. 73, 422 A.2d 8, 16 (1980)